Taylor v. Watkins.

ROBERT P. TAYLOR v. JEUNETTA WATKINS.

The doctrine of the presumption of grants from the State, by reason of long continued possession and claim, considered, and the leading authorities pertinent thereto reviewed.

The presumption of a grant can never fairly arise where all the circumstances are consistent with the non-existence of a grant; nor, *a fortiori*, where the claim is of such a nature as is at variance with the supposition of a grant.

The presumption of a grant may be repelled by proof.

Whether a grant is or is not to be presumed, under the circumstances of a particular case, is a question for the determination of a jury, and should be left to the jury by the court. And it is matter of grave consideration how far a judge may go in this State, in his instructions to a jury as to the conclusions they should draw from the facts in evidence in this class of cases.

See this case for circumstances arising out of and connected with the claim and possession, under which it was held to be error for the court to instruct the jury to presume a grant from the State.

The case of Morris v. Byers, 14th Texas Reports, 279, referred to; and the remarks of Mr. Justice Lipscomb therein, relative to the presumption of grants, pronounced to be *obiter dicta*.

Unless the pleadings are so framed as to lay a proper foundation for proof of a grant, the presumption of a grant cannot be indulged.

If a party in his pleading does not allege a grant, or does allege anything inconsistent with the fact of a grant, the presumption of a grant cannot be made.

APPEAL from Harrison. Tried below before the Hon. C. A. Frazer.

This was a suit of trespass to try title, instituted by the apellee against the appellant, on the 7th of December, 1855, for the recovery of one-third of a league of land in Harrison county.

The defendant answered with a general denial, the limitations of three and five years, and other matters not necessary to detail.

The facts are fully stated in the opinion.

At the Spring Term, 1858, there was verdict and judgment for the plaintiff. The defendant moved for a new trial, which was refused.

Taylor v. Watkins.

*M. J. Hall*, and *Robertson & Smith*, for appellant.

*N. H. Wilson*, for appellee. 1. The appellee claims by possession. It is well settled that, under the statute of limitations, 21 Jac., 1 c., 16, twenty years uninterrupted adverse possession of land not only tolls any right of entry which others, laboring under no disability, may have in the land whilst it was so possessed, but that it also confers upon the possessor perfect right of entry, and consequently a right of action to recover the possession in case he has been ousted from it. (Chiles v. Jones, 4 Dana, 578; Griffith v. Dicken, 2 B. Munroe, 20; Price v. Evans, 4 B. Munroe, 386; Jackson v. Oltz, 8 Wend., 440; Jackson v. Miller, 7 Cow., 751; Hottzapple v. Phillibaum, 4 Wash. C. C., 456.) The only difference between the 14th section of our statute of limitations and the statute of James, is, that ours reduces the bar to ten years; and the conclusion irresistibly follows, that, if twenty years possession will, under the statute of James, give such a right as will enable the plaintiff to recover the possession of land in an action in which the title is tried, ten years will give such a right here.

It has been the policy of our legislature to favor and protect that class of people who use and cultivate the soil, against the aggressions of another class who make a livelihood by turning them out of their homes, wherever they can find a defective title; and if it is good policy for five years adverse possession under a recorded deed, to give title, good policy certainly requires that ten years like possession should give title to one who has been in under a survey and recorded field notes, claiming commensurate with well defined metes and bounds. (See Charles v. Saffold, 13 Tex., 111.)

Ten years naked possession, without any *evidence of title*, will give title to six hundred and forty acres, under the 17th section; but, in this case, the appellee was in the peaceable possession of the land described in the petition, under color of title, with lines and boundaries well marked, claiming the whole tract, paying taxes thereon, and cultivating a part of it for more than that length of time.

44

It is submitted, that the appellee was in possession long enough to acquire title under the authority of Morris v. Byers. (14 Tex., 278.)

BELL, J. In her original petition, the plaintiff below alleged that the land in controversy was surveyed by virtue of the head-right certificate of David Page. She afterwards filed an amended petition, which contained the following allegations, to wit: "She shows that she may have been mistaken in alleging in her original petition that the survey of the land in controversy was made by virtue of the headright certificate of David Page, and now shows that she does not know, and cannot state, whether said survey was made by virtue of the headright certificate of the said Page, or of Charles Smith, but avers that she was, at the time she was evicted by the said defendant, to wit, on the first day of January, A. D. 1853, and long before that time, and still continues to be, the owner of the land described by the said survey, (meaning the Charles Smith survey;) and she shows that, from the month of August, A. D. 1835, until she was evicted as aforesaid, she was in the actual, quiet, peaceable, continuous and adverse possession of the land before described, claiming, using, cultivating and enjoying the same as her own property, and paying taxes thereon; wherefore she says, that she was, at the time of the aforesaid eviction, to wit, on the first day of January, A. D. 1853, and long before that time, and still continues to be the owner of said land."

These allegations, taken in connection with the evidence, show conclusively that the plaintiff below relied solely upon her long possession as giving her title to the land in controversy. The evidence showed no title in herself. The headright of David (or Daniel) Page, her former husband, had been located elsewhere. The Charles Smith certificate, by virtue of which the land in question was surveyed, had not been recommended as genuine by the local and traveling board of commissioners. But it was in evidence that the plaintiff below claimed the land under the Charles Smith certificate and survey.

The court below instructed the jury as follows: "If you believe from the testimony that the plaintiff, for ten years before the com-

Taylor v. Watkins.

mencement of this suit, was in the possession of six hundred and forty acres of land, cultivating, using or enjoying and claiming the same as her own, by defined boundaries, and the same being the land described in her petition, and the land in controversy being a part thereof, you will find for the plaintiff, unless, under the instructions hereinafter given, you should find for the defendant; or, if the plaintiff, for fifteen years before the commencement of this suit, was in the peaccable possession of the one-third of a league of land described in her petition, cultivating, using or enjoying the same, and claiming it as her own, by defined boundaries, . the land in controversy being a part thereof, you will find for the plaintiff, unless, under the instructions hereinafter given, you should find for the defendant." The judge then proceeded to instruct the jury in reference to the statute of limitations, which was pleaded by the defendant. The jury found a verdict for the plaintiff for the third of a league of land, as claimed in her petition.

The Abraham Jenkins certificate was filed on a part of the same land included within the Charles Smith survey, on the 16th of January, A. D. 1850; and patent was issued to William Davenport, the assignee of the certificate, on the 26th day of March, A. D. 1855. The defendant below claimed under this title. This suit was instituted on the 7th day of December, A. D. 1855. It will thus be seen that if, in point of fact, the State had not granted the land in controversy to the plaintiff below, the title remained in the State until within less than ten years prior to the institution of this suit. Under these circumstances, it may be doubted whether the first branch of the instruction given by the court below to the jury, in reference to ten years possession of six hundred and forty acres, was correct in its application to this case. Be this, however, as it may, it will be observed that the instruction is not expressed with accuracy, because, in strict obedience to it, the jury might have found a general verdict for the plaintiff, which would have required a judgment for the whole of the third of a league claimed in her petition. We think it plain, however, that the jury found the verdict under the second branch of the instruction given to them, viz., that which refers to the possession of the third of a league for fifteen years, by defined boundaries.

The first branch of the instruction need not therefore be considered.

Neither do we deem it necessary to notice particularly the question of limitation, because the jury might not unreasonably have inferred that the field notes of the Jenkins survey were not returned to the general land office on or before the 31st of August, A. D. 1853, as was required by law, from the fact that the certificate appeared to have been removed from the file, and re-filed on the 26th of June, A. D. 1854, which facts would point to the last named period as the origin of Davenport's title.

From what has been said, it will be seen that the only question presented in the case, which it is necessary to consider, arises upon the second branch of the instruction of the court below to the jury. That part of the instruction (as has been before stated) was to the effect, that if the plaintiff below had been in the peaceable possession of the land claimed in her petition for fifteen years, claiming under defined boundaries, and cultivating, using or enjoying the same, and claiming it as her own, she would be entitled to recover. We are of opinion that the instruction with reference to the facts of this case was erroneous.

There are few subjects upon which there has been a greater diversity of decisions by the courts than upon the general subject of presumptions, and it is difficult, if not impossible, in the nature of the subject, to lay down any rule that would not be found to require modification or relaxation in its application to the circumstances of particular cases. Some very strong cases are to be found in the books, in which courts of equity, and sometimes courts of law, have indulged presumptions of grants upon possessions comparatively brief; but such cases will be found, for the most part, to be cases in which the possession is aided by very strong equities in favor of the party in whose behalf the presumption is indulged. When we come to inquire into the general principles upon which presumptions of grants are resorted to by courts of justice, we are told that they are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are said to be founded upon the consideration that the facts are such as could not, according to the ordinary course

of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in, the party in possession. (Ricard v. Williams, 7 Wheaton, 109.) "They may, therefore," says Judge 'Story, in the case just cited, and after using the language above quoted, "be encountered and rebutted by contrary presumptions, and can never fairly arise where all the circumstances are perfectly consistent with the non-existence of a grant; *a fortiori*, they cannot arise where the claim is of such a nature as is at variance with the supposition of a grant."

The case of Burke v. Negro Joe, 6 Gill & Johnson, 136, is a well considered case on the doctrine of presumptions. It was a question concerning the freedom of a negro. The court said, "The general doctrine of presumption as applied to patents, deeds, &c., is too well established now to require an examination. Although directed by law to be recorded within a limited time, and to have no legal effect unless such requisitions are complied with; yet, to quiet possession, the courts, upon a proper foundation being laid for it, will direct the jury to presume the existence of such papers, and that all legal requisitions had been complied with to give them effect." The court then said that a deed of manumission stood upon the same footing as any other deed, and continued: "The presumption of a deed to give freedom must be founded upon acts inconsistent with a state of slavery known to the owner, and which can only be rationally accounted for upon a supposition that he had intended to free his slave." The court further said, "It cannot be doubted that all cases of presumption may be rebutted or explained, and if you can prove by facts, that the foundation on which the presumption is claimed did not exist, it must fail. In this case, the exercise of freedom by going at large, &c., may have had a lawful commencement, or it may have been an offence under the act of 1787, which would subject the owner to a prosecution. In the absence of all testimony to show it was without right, it will be deemed lawful, for the law will never construe an act tortious, unless from necessity. It will consider the act lawful, the commencement and contrivance of which are not proved to be wrongful." It may be interesting to state the facts of this case, that it may be seen under what circum-

stances the court laid down the doctrine of presumptions with so much caution. The court stated the case thus: "The grand-mother and mother of this petitioner were the slaves of William Mackubin, and they and their descendants have been at large, acting as free, from the year 1797 to 1832. They were permitted to own property, contract debts, rent farms, and support themselves and children, until the death of Mr. Mackubin, in 1805—living during that time within three miles of his residence. By his last will and testament he bequeathed all his property to his wife, Elizabeth, for life, the remainder to his children. She administered and took possession of his property, settled up the estate, and died in 1824. After her death, the children of William Mackubin, who were tenants in remainder of his property, took possession of it, and of the property of Elizabeth Mackubin, sold it, paid the debts of Elizabeth, and divided the residue among them. They all knew that Dinah and Lavinia (the grand-mother and mother of the petitioner,) had been the slaves of William Mackubin, and that they had for many years acted as free, yet no claim was set up to them, but they were permitted to enjoy unmolested their freedom." It was also in proof that during the life of Elizabeth Mackubin, some of the issue of Lavinia and Dinah, and Lavinia herself, were frequently at the place where she resided, and were sometimes hired by the family in which she lived, and received wages as free persons. The circuit court instructed the jury, that upon the evidence above stated, if they believed it, they might presume that Dinah was legally manumitted by William Mackubin, and the appellate court affirmed the judgment.

In the latest edition of his treatise on the law of evidence, Mr. Phillips says: "Grants from the crown may be presumed, but where such a presumption has been made, it has been under particular circumstances, and after a much longer period of time than has been deemed sufficient for raising the presumption of a grant from private individuals."

In the learned notes by Cowen & Hill (and other annotators,) to the work just quoted, there is a very careful analysis and review of the numerous cases on this subject. It is there said

Taylor v. Watkins.

that "courts of law and equity adopt the presumption of grants, upon the same principle which governs them in the presumed payment and extinction of debts and other executory claims." And when we turn to what is said upon the latter head, we find the rule laid down to be, that the presumption of payment may be rebutted by proof. It is said "the presumption may be repelled by various circumstances;" as by an admission that the debt is due, or a payment of interest. It is also said that the presumption may be resisted by showing the obligor's inability to pay, or by showing the long continued and permanent absence of the debtor in a different State in the Union.

Mr. Greenleaf, in his work on the law of evidence, treats of the class of presumptions which are now under consideration, as *presumptions of fact*. He says, "Although lapse of time does not of itself furnish a conclusive legal bar to the title of the sovereign, agreeably to the maxim, *nullum tempus occurrit regi;* yet, if the adverse claim could have had a legal commencement, juries are instructed or advised to presume such commencement, after many years of uninterrupted adverse possession or enjoyment. * * * * * In regard, however, to crown or public grants, a longer lapse of time has generally been deemed necessary, in order to justify this presumption, than is considered sufficient to authorize the like presumption in the case of grants from private persons." (1 Greenl. Ev., sec. 45.)

A careful examination of the cases will show that courts have been more willing to presume conveyances between private individuals, than they have been to presume grants from the crown or State. Yet Mr. Greenleaf, in treating of presumptions of conveyances between private individuals, concludes by saying, "It is sufficient that the party who asks for the aid of this presumption, has proved a title to the beneficial ownership, and a long possession not inconsistent therewith; and has made it not unreasonable to believe that the deed of conveyance, or other act essential to the title, was duly executed. Where these merits are wanting, the jury are not advised to make the presumption." In a note to this passage, the learned author refers to several cases to show the length of possession to which the rule has, at different times,

been applied; and says: "The rule, however, does not seem to depend so much upon the mere lapse of a definite period of time, as upon all the circumstances taken together; the question being exclusively for the jury." And in the text of his work, in concluding his observations upon the general head of presumptions of fact, he says: "In fine, this class of presumptions embraces all the connections and relations between the facts proved, and the hypothesis stated and defended, whether they are mechanical or physical, or of a purely moral nature. It is that which prevails in the ordinary affairs of life, namely, the process of ascertaining one fact from the existence of another, without the aid of any rule of law; and, therefore, it falls within the exclusive province of the jury, who are bound to find according to the truth, even in cases where the parties and the court would be precluded by an estoppel, if the matter were so pleaded. They are usually aided in their labors by the advice and instructions of the judge, more or less strongly urged, at his discretion; but the whole matter is free before them, unembarrassed by any considerations of policy or convenience, and unlimited by any boundaries but those of truth, to be decided by themselves, according to the convictions of their own understanding." (Greenl. Ev., vol. 1, sec. 48.) I am of opinion that the author, in this passage, freeing himself from the embarrassments of conflicting cases, has stated the true principles upon which the doctrine of presumptions, with reference to grants, either from the state or between individuals, is founded. And I think it a matter for grave consideration, how far a judge may go in this State, in pressing upon a jury his advice as to what conclusions they ought to draw from facts in evidence, in view of that provision of our law which prohibits a judge from giving any charge upon the weight of evidence.

A very large proportion of the cases, both in England and America, in which courts have indulged the presumption of a grant, are cases in which the subject matter of the grant to be presumed, was an incorporeal hereditament, and it was long questioned whether the doctrine of presumption ought to be applied to land. And it has happened that general expressions respecting presumptions of grants, employed in cases where the question was,

concerning a right of way, or other easement, have afterwards been quoted without any nice regard to the circumstances of the case in which they were originally used. But when we come to examine the cases, in which the question has been respecting land itself, we will find that the courts have seldom, if ever, presumed a grant, except in support of a claim of title, apparently just, and a possession in all respects consistent with the presumption to be indulged.

In the case of Doe v. Cooke, 6th Bing., 174, Ch. Justice Tindal said, "No case can be put, in which any presumption has been made, except where a title has been shown, by the party who calls for the presumption, good in substance, but wanting some collateral matter necessary to make it complete in point of form. In such case, where the possession is known to have been consistent with the fact directed to be presumed, and in such cases only, has it ever been allowed."

In Fenwick v. Reed, 5 B. & A., 79, Abbott C. J., said, " In my opinion, presumptions of grants and conveyances have already gone to too great length, and I am not disposed to extend them further." And in the same case, Holroyd J. said, ".In cases of rights of way, &c., the original enjoyment cannot be accounted for, unless a grant has been made, and therefore it is, that, from long enjoyment, such grants are presumed. But even in these cases, evidence to rebut such a presumption would be admissible."

In Livett v. Wilson, 3 Bing., 64, Best, C. J., said, speaking of a right of way, "I do not dispute that if there had been an uninterrupted usage for twenty years, the jury might be authorized to presume it originated in a deed; but even in such a case, a judge would not be justified in saying that they must, but that they may presume a deed. If, however, there are circumstances inconsistent with the existence of a deed, the jury should be directed to consider them, and to decide accordingly."

The case of Hurst's Lessee v. McNeil, 1 Washington's C. C. Rep., 70, was a case in which the party in whose favor the jury presumed the existence of a deed, had been in possession for fifty-eight years, under circumstances strongly favoring the presump-

tion.  Judge Washington instructed the jury as follows: "The jury may presume a deed from Mrs. Fell, or some other agreement between her and William the Third, by which she passed to him her fourth part of Penn's manor.  This presumption, if warranted by such evidence as will satisfy your minds that the fact existed, may be made in favor of this long and quiet possession under William Penn.  But those circumstances may be accounted for and repelled; and after weighing all the evidence, you must decide which preponderates."  In another part of the charge, he said, "The jury will weigh the circumstances relied upon, to warrant the presumption, and the answers which have been given to them.  If they, upon their oaths, feel satisfied that Mrs. Fell did, in some way or other, convey away her right to William the Third, they will find for defendant, otherwise for plaintiff."  Many other well considered cases to the same effect, might be cited.  On the other hand, cases are to be found where the question was concerning a grant to land, in which it is laid down that the rule respecting presumptions of title is founded in considerations of public policy, and is a conclusive presumption, made without regard to the very fact.  The case of Bullard v. Barksdale, 11 Iredell, is such a case.  But even in that case, it is said, "If, indeed, one enter for a particular estate, or under a particular title, and the nature of the original entry be shown, then the presumption, that the possession, though very long, was upon a claim of the possession to the estate, does not arise as a legal inference; and it can enure to transfer the estate, only when the possession is so very long, and upon a claim of right, as, with other circumstances, to induce the actual belief, that subsequent to the possession taken, there were other dealings upon which the conveyances were in fact made."

I draw the conclusion, from what has been said, that the question whether a grant will be presumed or not, is a question for the jury; in other words, that the court ought always to leave it to the jury to presume a grant or not, according to the evidence and the circumstances of the case; that the presumption of a grant does arise from long and uninterrupted possession, where the possession is consistent with the presumption, and that the jury may properly

be told thus much as matter of law; but that the presumption is one which may always be repelled by proof.

In reference to the former decisions of this court, while I cannot assent to all that is said in the opinion of the court in the case of Lewis v. The City of San Antonio, I think the substance of that opinion, and the opinion of the same learned judge in the case of Paul v. Perez, and also the opinion of the present Chief Justice in the case of Herndon v. Casiano, will be found to be in accordance with the views which I have now endeavored to present.    In Paul v. Perez, Mr. Justice Lipscomb said, "We are fully satisfied that the record in this case fairly presents the question for a jury to determine whether they would presume a valid grant to sustain the defendant's rights," thus assuming that the question was one for the jury.    In Herndon v. Casiano, it was said, "It will be seen by reference to the opinion of the court, in the case of Lewis v. The City of San Antonio, that, although certain rules have been established on the subject of the presumption of grants, the question will still depend, in some degree, on the particular circumstances of the case."

The language employed by Mr. Justice Lipscomb, in the concluding paragraph (or in the last but one) of his opinion in the case of Morris v. Byers, 14th Tex., was not necessary to the decision of that case, and does not therefore carry with it, in its fullest extent, the weight of authority.

It is said that, in all cases of presumptive payment at law or in equity, the pleadings must contain an averment of payment, otherwise the presumption cannot be raised. (Tibbs' Heirs v. Clark, 5 Munroe, 526.)    This would seem to be an elementary principle. And in a case like the present, the pleadings ought always to be so framed as to lay a proper foundation for proof of a grant, otherwise the presumption of a grant cannot be raised.    Therefore, if a party does not allege a grant, or alleges anything at variance with the fact of a grant, a grant cannot be presumed.

In the present case, the plaintiff in the court below proved that she claimed the land in controversy, by virtue of the headright survey and certificate of Charles Smith.    It was only by connecting her possession with a claim under the Charles Smith survey,

that she could show any claim to defined boundaries. It was also in proof, that the Charles Smith headright certificate had never been recommended as genuine; that a suit had been instituted by another person, who claimed the Charles Smith certificate, to establish its genuineness; that the plaintiff below intervened in that suit, claiming the certificate as her own, and seeking to establish it as genuine for her own benefit; and that the suit was dismissed without the genuineness of the certificate having been established. It was also in evidence, that the plaintiff had declared that she had lost her land through the fraud or mismanagement of her son-in-law. These were all circumstances tending to repel the presumption of a grant; and if the allegations of the plaintiff's petition were sufficient to authorize the introduction of evidence by her, which may, perhaps, be questionable, the least that can be said is, that the court ought to have left it to the jury to say, upon the whole evidence, whether there has ever been a grant to the plaintiff or not. The judgment is reversed and the cause remanded.

Reversed and remanded.