LE BLANC et al. v. JACKSON.

(Court of Civil Appeals of Texas. Galveston. Oct. 23, 1913. Rehearing Denied Nov. 13, 1913.)

1. APPEAL AND ERROR (§ 719*) — TRIAL BY COURT—VOLUNTARY FINDINGS—EFFECT.

When conclusions of fact are voluntarily filed by the trial court, neither party is required to take notice, and no exception to the conclusions and no assignments of error therein are required of parties against whom such findings are made, to entitle them to attack the judgment on the ground that it is unsupported by the evidence; but, where the facts are complicated, it is not improper for the court to look to them in making its own conclusions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.*]

2. ADVERSE POSSESSION (§ 104*) — PRESUMPTION—EXECUTION AND EXISTENCE.

The execution of a deed may be established by circumstances, or by the presumption arising from circumstances of the existence of such muniments of title as are necessary to give lawful origin to a title long openly asserted on one side, with acquiescence in such claim on the other.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 595–602; Dec. Dig. § 104.*]

3. ADVERSE POSSESSION (§ 114*) — PRESUMPTION—EXECUTION AND EXISTENCE.

Where it appears from the facts and circumstances to be more probable that a deed or other muniment of title in question had been executed than that it had not been, the jury would be authorized to presume that it had been so executed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. § 114.*]

4. ADVERSE POSSESSION (§ 14*) — PRESUMPTION—EXECUTION AND EXISTENCE—ACTUAL POSSESSION.

Actual possession is not essential to the presumption of the existence of a deed, that

being only evidence of a claim of title tending to fix notice upon the holder of the adversary title and tending also to show acquiescence. It is essential that there be a claim of ownership openly, and notoriously asserted, and which can only be reasonably explained by the existence of the muniments of title necessary to support such claim. It is also essential that such assertion of ownership be acquiesced in by the owner of the adversary title, although such acquiescence is of greater weight than the assertion of ownership, and, to constitute such acquiescence, knowledge, which may be shown by circumstances, is essential.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 77–81; Dec. Dig. § 14.*]

5. ADVERSE POSSESSION (§ 104*) — PRESUMPTION OF EXISTENCE—ACQUIESCENCE.

The execution of a deed or the existence of other muniment of title may be presumed from mere silence or failure to object to another's known assertion of title without any corroborating act evidencing such acquiescence.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 595–602; Dec. Dig. § 104.*]

6. ADVERSE POSSESSION (§ 104*)—NATURE OF PRESUMPTION OF EXECUTION.

The presumption of the execution or existence of a deed from the facts and circumstances shown is a presumption of fact.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 595–602; Dec. Dig. § 104.*]

7. TRESPASS TO TRY TITLE (§ 41*) — SUFFICIENCY OF EVIDENCE—EXISTENCE AND EXECUTION.

In trespass to try title, evidence *held* sufficient to support a conclusion that defendant's grantor by deed or settlement had acquired the title of two of his brothers to their interest in the land.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

8. TRESPASS TO TRY TITLE (§ 41*)—ADMISSIBILITY OF EVIDENCE—CLAIM OF TITLE.

In trespass to try title, evidence that the talk in the family was that a brother of defendant's grantor had sold his interest to such grantor, contemporary with and explanatory of the grantor's claim of title, was admissible as bearing on the knowledge of such claim by the heirs of the grantor's brother.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

9. ADVERSE POSSESSION (§ 104*)—PAROL EVIDENCE—APPLICATION OF RULE.

The rule that parol testimony cannot be offered over objection to prove a sale of land in this state has no application to a case where circumstances are relied on to support a presumption of a deed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 595–602; Dec. Dig. § 104.*]

10. GUARDIAN AND WARD (§ 111*)—CONVEYANCE OF WARD'S PROPERTY—EFFECT.

In trespass to try title, a deed to defendant's grantor signed C. B. per S. Le B., "curator," in the absence of any authority shown for his execution of the deed, was not binding upon C. B. and was insufficient to pass her title.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 180–185; Dec. Dig. § 111.*]

11. APPEAL AND ERROR (§ 173*)—NECESSITY OF OBJECTION—ADMISSION OF EVIDENCE.

In trespass to try title, the contention, that failure to object to the introduction of a deed by the heirs of the grantor claiming her title barred them from objecting to its validity on appeal, was not sound, where the latter objection was as to the legal effect of the deed as conveying the grantor's interest.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1089, 1091–1093, 1095–1098, 1101–1120; Dec. Dig. § 173.*]

12. HUSBAND AND WIFE (§ 273*)—PRESUMPTION—SEPARATE PROPERTY OF HUSBAND.

Where a wife died before the execution of a deed by which the surviving husband acquired title, the presumption was that the property was his separate estate, to overcome which it was necessary to show that title had in effect been acquired by purchase prior to the death of the wife and had been paid for with community funds.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

13. VENDOR AND PURCHASER (§ 242*) — PURCHASER FOR VALUE—BURDEN OF PROOF.

Parties asserting an equitable title as against a purchaser for value have the burden of showing that he had notice of all the facts constituting their title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 603–605; Dec. Dig. § 242.*]

14. VENDOR AND PURCHASER (§ 239*) — PURCHASER FOR VALUE—TITLE.

The legal title of the purchaser for value, not shown to have notice of an outstanding equitable title, was superior to the equity.

[Ed. Note.—For other case, see Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. § 239.*]

15. APPEAL AND ERROR (§ 395*)—DISMISSAL—FAILURE TO FILE APPEAL BOND.

Where an appeal bond was not filed within the time required by law, the appeal is properly dismissed on motion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2058, 2064–2070, 2085, 2086, 3127; Dec. Dig. § 395.*]

16. DEEDS (§ 31*)—SIGNATURE—EFFECT.

A deed is not binding upon one who signs it but who is not named in the body of the deed as one of the grantors.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 60–63; Dec. Dig. § 31.*]

17. VENDOR AND PURCHASER (§ 229*)—BONA FIDE PURCHASER—PRESUMPTION.

Where a purchaser was affected with notice that his grantor acquired title during the life of his wife, he was charged with notice that the property was community property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. § 229.*]

18. VENDOR AND PURCHASER (§ 229*) — BONA FIDE PURCHASER—NOTICE.

Where a purchaser knew that his grantor had been married, as several of his children joined in the deed, he was bound to take notice of other children of the grantor's wife entitled to an interest in their mother's half of community land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. § 229.*]

Appeal from District Court, Jefferson County; John M. Conley, Judge.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Trespass to try title by Ellen Craigen and others against R. S. Jackson, in which Elodie Le Blanc and others intervened, claiming the entire tract, with amended petition, making defendant Jackson and the interveners defendants, and with cross-action by interveners against Jackson. From the judgment, plaintiffs and part of the interveners appeal. Reformed and affirmed.

Thos. J. Baten and E. E. Easterling, both of Beaumont, for Le Blanc and others. Blain & Howth, of Beaumont, for Craigen and others. Lipscomb & Lipscomb, of Beaumont, for appellee.

REESE, J. As originally instituted, this was an action in trespass to try title by Ellen Craigen and Odelia Carouthers, joined by her husband, against R. S. Jackson to recover an undivided one-eighth interest in a certain 666 acres of land out of the W. H. Smith league in Jefferson county. After the institution of the suit, Elodie Le Blanc and several others intervened, setting up claim, according to the face of their plea, to the entire tract. The original plaintiffs filed an amended petition in which interveners and the defendant Jackson were made defendants, setting up title in the usual form of an action of trespass to try title against all of these to the said undivided one-eighth interest in the tract. Interveners answered this amended petition by a plea of not guilty and a cross-action against plaintiffs and defendant Jackson for the entire tract. Defendant Jackson by amended answer pleaded, as against all the parties, not guilty and the statute of limitation of three, five, and ten years. This constituted the pleadings in the case. The case was tried without a jury and resulted in a judgment for the plaintiffs for one-eighth of the two-eighths interest inherited by Theophile and Emile Broussard from their father, P. O. Broussard, also one-fourth of the one-eighth interest inherited from her father, P. O. Broussard, by Victoire Hebert, and conveyed by her to Phillip Gallier. Some of the interveners recovered small interests in the land and some failed of recovery. The defendant Jackson recovered the one-eighth interest inherited by Derneuville Broussard from P. O. Broussard, also the two-eighths of Theophile and Emile Broussard inherited from P. O. Broussard, their father, less a small interest therein awarded to plaintiffs, also three-fourths of the one-eighth interest of Victoire Hebert sold by her to Phillip Gallier, also the interests of some of the other children of P. O. Broussard and their descendants not necessary to particularize here. From this judgment the plaintiffs and interveners (except the heirs of Emerante Broussard, who recovered the one-eighth interest inherited by their mother from P. O. Broussard) have appealed. The defendant Jackson also filed an appeal bond and, as appellant, seeks separately a reversal of the judgment in favor of the heirs of Emerante Broussard, which appeal they seek by motion to have dismissed for reasons hereafter stated in passing on this motion.

[1] The trial court filed and had incorporated in the record conclusions of fact and law, but there was no request by any party therefor, so far as is shown by the record. The exact status of such findings has not been, so far as we have been able to find, fixed by the courts. It was held by this court in City of Houston v. Kapner, 43 Tex. Civ. App. 507, 95 S. W. 1103, in considering an objection to the consideration of such conclusions, on the ground that, "when such conclusions are voluntarily filed by the judge, neither party is required to take notice of them, and no exception to the conclusions nor assignments predicating error on the findings of fact therein contained are required of the parties against whom such findings are made to entitle him to attack the judgment on the ground that it is unsupported by the evidence. * * * The question of whether such conclusions can be considered by the appellate court is not presented, and we do not feel called upon to decide." The conclusions are ignored by the briefs; but, as the facts are quite complicated in some particulars, we have deemed it not improper to look to them in making our own conclusions.

So far as is material and necessary to a decision of the questions involved in this appeal, the facts are as follows: P. O. Broussard is the common source of title. He died in 1877 in the state of Louisiana where he resided. He owned at the time of his death a considerable estate in lands and cattle, etc., in that state, which seems to have been located about Johnson's bayou in the southwestern corner of the state. No mention is made of a will, so we assume that he died intestate. He left surviving him seven children—three sons, Derneuville, Emile, and Theophile, and four daughters, Delzinde, Ezilda, Victoire, and Emerante—and the descendants of another daughter Azema (her children and grandchildren). At his death P. O. Broussard was possessed of two tracts of land in the Smith league in Jefferson county, containing approximately 1,000 acres. One of these tracts, containing 667 acres, is involved in this action.

Derneuville Broussard married a widow with two children, Ellen Craigen and Odelia Carouthers, the plaintiffs herein. By her he had six children. Mrs. Broussard died in April, 1893, as testified positively by Edgar Carouthers, husband of Odelia Carouthers, and one of the plaintiffs, although her daughter testified that she died in 1893 or 1894. On the 7th of October, 1907, Derneuville Broussard and his daughters aforesaid conveyed to the defendant, R. S. Jackson, under general warranty deed, for a recited con-

sideration of $1,332, all their interest in the tract of land here involved.

On September 3, 1894, Ezilda Broussard and Delzinde Broussard and a number of others, including the children of Emerante Broussard, and some if not all the children or descendants of the other daughter, Azema, executed to Derneuville Broussard a deed to what purports to be an undivided five-ninths, amounting to about 354 acres of the land involved herein, and being the interest inherited from P. O. Broussard. With regard to this deed there are certain facts which will be set out in discussing certain of the questions presented by the appeal, but the foregoing general statement is sufficient here. Victoire, one of the daughters, married Sarazine Hebert. Her interest in the land was conveyed by her to Phillip Gallier, who died, and part of his estate was inherited by his sister, Mrs. Derneuville Broussard, and through her by her two daughters, the plaintiffs Craigen and Carouthers, and her children by Derneuville Broussard. The interest of the latter passed to Jackson by the deed of Derneuville and his daughters aforesaid, and the interest of plaintiffs in this portion was awarded to them by the judgment. Derneuville Broussard did not himself claim any interest in that part inherited by Victoire and conveyed by her to Gallier.

Emile Broussard died in 1904, and Theophile in 1881. There was no deed or other written evidence of title in Derneuville Broussard of their respective interests from Theophile or Emile. To support his title to their interest defendant Jackson relied upon certain circumstances, as affording a presumption that Derneuville had acquired these interests from them prior to the death of Theophile. The court found these circumstances sufficient to authorize such presumption and that Derneuville had lawfully acquired title to the interest of Emile and Theophile. By appropriate assignments of error appellants interveners have attacked this finding on the ground that there is no evidence to support this presumption. This presents the most troublesome question in the case, and one about which we have had much difficulty.

The facts and circumstances found by the trial court, and upon which it bases the conclusion of fact that Emile and Theophile had conveyed their interest to Derneuville, are stated in his findings of fact as follows:

"That in addition to the land in Texas, the said P. O. Broussard was the owner of stock running on the range in Jefferson county, Tex. The son Derneuville Broussard, at the time of his father's death, lived in Texas, and resided on the 667-acre tract, and up to and including the year 1907 had fenced and under cultivation about 20 acres of said tract of land. After the death of P. O. Broussard, the son Emile Broussard principally looked after the business of the estate in Jefferson county, Tex. Under the direction and at the solicitation of Emile Broussard, Mr. J. Burrell, an old citizen of this county, for a number of years and up to and including the year 1881, rendered the land for taxation in the name of P. O. Broussard, and paid the taxes on said land out of the sale of stock belonging to the estate of P. O. Broussard, rendering an account of the balance of such sales to the said Emile Broussard. That about the year 1881, Emile Broussard and Theophile Broussard were both in Jefferson county, Tex., and in the Hamshire settlement, where Derneuville Broussard, J. Burrell, and L. Hamshire lived. Some time about this period, Theo. Broussard tried to sell his interest in his father's estate to L. Hamshire, who refused to buy. That also, about this period, there was some adjustment or settlement between the brothers Theo. Broussard, Emile Broussard, and Derneuville Broussard as to their interest in their father's estate in Texas. That thereafter Emile Broussard ceased to act as the head of and to look after the estate, and that Derneuville Broussard thereafter instructed Mr. J. Burrell to render the lands for taxes in his name, that is, D. Broussard instead of P. O. Broussard, which was done from the year 1883 to the year 1907. That Mr. J. Burrell, upon the solicitation and instruction of Derneuville Broussard, continued to pay the taxes on said lands out of the proceeds from the sale of cattle on the range, which said land and cattle D. Broussard was claiming as his own, and accounted to him for the balance of the proceeds of the sale of the cattle. That this continued for a great number of years. That after the settlement between the brothers it was common talk, or rumor, in the neighborhood, that Derneuville Broussard had bought the interest of Theo. Broussard in the land, and that he had also in some manner acquired the interest of Emile Broussard. Emile Broussard died about the year 1903, and after such settlement and up to the time of his death had made no assertion of title or ownership to any interest in the lands in Texas. Theo. Broussard died December 15, 1881, and after the settlement and up to the time of his death made no assertion of title or ownership to any interest in said lands, and in no manner interfered with nor denied the claim of ownership and possession of Derneuville Broussard to the entire tract of land, although they were in and out of the neighborhood at frequent intervals.

Shortly after the death of the wife of Derneuville Broussard in 1892–1893, he (Derneuville Broussard) undertook to qualify as survivor in community over the estate of himself and deceased spouse, and in an affidavit filed in the probate court of Jefferson county, set out that the wife's community interest consisted of 125 acres of land in the Smith league. Derneuville Broussard was married some time prior to 1880, but the exact date

is not shown. In the filing of the above affidavit in his effort to qualify as survivor in community, it is apparent that he undertook to and did treat as community interest the two-eighths of 1,000 acres, or 250 acres, which he had acquired from his two brothers, Emile and Theo. Broussard. The community interest of the wife in the same would equal 125 acres, the amount specified in the affidavit. About this time Derneuville Broussard employed Albert Broussard, an attorney of this bar, to make a search of the records of this county to ascertain if he could find of record any instrument from any of his brothers and sisters covering a transfer of their shares in his father's estate to him, saying he had purchased some such interests. The search was made and no such instruments were found registered in this county. It was also family history that Derneuville Broussard had acquired some of the interests of his brothers or sisters in the early 80's."

To which we add that, after the death of Theophile in 1881 and of Emile in 1903, none of their heirs ever asserted any claim or disputed the claim set up by Derneuville aforesaid. Mrs. Hayes, a daughter of Derneuville, testified that her father had bought the interests of some of his brothers and sisters prior to the death of her mother.

[2] The doctrine of the proof of the execution of a deed by circumstances, or the presumption arising from certain circumstances of the existence of such muniments of title as are necessary to give lawful origin to a title long openly asserted on one side, with acquiescence in such claim on the other, is not new, but has been long established. So far as the general principle is concerned, it is established by a uniform course of decision in this state. Difficulty only arises in the application of the general principle to the facts of the particular case. The doctrine is nowhere more strongly asserted than by Justice Field, speaking for the Supreme Court of the United States in the case of Fletcher v. Fuller, 120 U. S. 534, 7 Sup. Ct. 667, 30 L. Ed. 759. In Dailey v. Starr, 26 Tex. 567, the court says that "it would be difficult to lay down, so as to answer any beneficial purposes, the circumstances under which deeds will be presumed to have existed," and in Beincourt v. Parker, 27 Tex. 564, "although to some extent every case must stand upon its own peculiar facts, the principles upon which the courts are to be guided in the presumption of grants may be said to be now well established," citing Taylor v. Watkins, 26 Tex. 688, and Yancey v. Norris, 27 Tex. 40. The facts of various cases vary, from those which lead so irresistibly to the conclusion that the claimed deed or muniment of title existed, that a verdict of a jury against such conclusion would hardly be allowed to stand, to those where they are held sufficient for that purpose only in deference to the conclusion of the jury, or the court trying the facts as a jury, upon the issue of fact thus presented.

[3] A charge to the jury has been many times approved by this court (and by the Supreme Court by refusal of writs of error) wherein the jury was instructed, in substance, that, if from the facts and circumstances in evidence it appeared to be more probable that the deed or other muniment of title in question had been executed than that it had not been, the jury would be authorized to presume that it had been so executed. In some cases it has been held that the facts were insufficient to support such finding by the jury, as in Beincourt v. Parker, supra, Walker v. Caradine, 78 Tex. 489, 15 S. W. 31, and probably other cases which might be cited, which only signify that each must stand upon its own facts; regard being had to the general principle stated.

[4] Actual possession, in this state, is not essential. Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033. This is only evidence of a claim of title tending to fix notice upon the holder of the adversary title of such claim and tending also to show acquiescence. But it is essential that there should be claim of ownership openly and notoriously asserted, and which can only be reasonably explained by the existence of the muniments of title necessary to support such claim, and it is essential that such assertion of ownership be acquiesced in by the holder of the adversary title. By the courts it is held that acquiescence on the one side is of more importance than assertion of ownership on the other, and logically so, for it is not unusual for men to claim what does not belong to them, but it is contrary to human experience that such adversary claim, if known, should be allowed to go undisputed if it has no basis in fact. Knowledge is essential to such acquiescence, for one cannot be supposed to acquiesce in a claim hostile to his own interest unless he has knowledge of it. Walker v. Caradine, supra. But this knowledge may also be shown by circumstances.

[5] It is earnestly contended by appellant that mere silence or failure in any way to make any objection to this assertion of title, even when known, is never sufficient evidence of acquiescence, but that some corroborating act must be shown evidencing such acquiescence before the execution of a deed, or the existence of other muniment of title will be presumed. We can find no support for this doctrine except in the opinion of the Court of Civil Appeals of the Fourth District in Kimball v. Houston Oil Co., 114 S. W. 662. The doctrine as there stated is not supported by the authorities cited. For instance, it is stated in the opinion that "it is stated in Herndon v. Vick, 89 Tex. 475 [35 S. W. 141] that nonclaim alone is not enough, but that to entitle such a matter to be submitted to a jury for determination requires that there be corroborating circumstances." We do not so understand the opinion in that

case. What was really said is: "The ground of this contention is that the proof of the long and continued possession, use, and an enjoyment of the land in controversy, under a claim of title by defendant in error and those under whom he claims, together with the evidence that no claim had ever been asserted on behalf of the plaintiff in error until the bringing of this suit, is so conclusive in its nature and tendency as to impel the court to presume a sale or conveyance from Cole back to the original grantee, should it be found that Cole ever possessed the title. It has doubtless been held in other jurisdictions that the inference arising from long possession and enjoyment of real estate, together with corroborating circumstances, may be so cogent as to make it the duty of the court to instruct the jury to presume a grant. Such is not the rule in this state. With us the presumption is one of fact, and it is for the jury to determine the effect of the evidence in support of that presumption. Taylor v. Watkins, 26 Tex. 688; Walker v. Caradine, 78 Tex. 489 [15 S. W. 31]; Dailey v. Starr, 26 Tex. 562." The court also cites Boone v. Miller, 73 Tex. 557, 11 S. W. 551, and Walker v. Caradine, 78 Tex. 492, 15 S. W. 31, as cases which practically settle the question in this state. Neither of these cases afford any support to the doctrine stated in the opinion referred to.

[6] The court seems to have not been mindful of the distinction between a presumption of law declared by the court, and a presumption of fact to be found by the jury. The presumption here, as relating to deeds from Emile and Theophile Broussard to Derneuville Broussard, is one of fact found by the court sitting as a jury.

[7] Applying these general principles to the evidence in the present case, we are of the opinion that the evidence on the whole is sufficient to support the conclusion of the trial court, sitting as a jury, that about the year 1881, either in a general settlement of the estate of P. O. Broussard or by direct purchase, Derneuville Broussard acquired the title of Emile and Theophile Broussard to their respective interests in this land. All the parties to the transaction are dead. So far as concerns the mere possession of Derneuville, that can well be attributed to the fact that he unquestionably owned, as one of the heirs, a one-eighth interest, amounting to about 80 acres, and his actual possession never at any time embraced more than 20 acres. But the evidence strongly supports the conclusion that he claimed, about 1881, to have acquired the interest of his two brothers, and that this must have been known to them. After the death of P. O. Broussard, and indeed before that, Emile actually looked after the Texas property, and the land was rendered for taxes in the name of P. O. Broussard up to 1883, and taxes were paid by the estate. Beginning with 1883, by direction of Derneuville,

it was rendered in his name, and so continued up to his sale to Jackson in 1907, and he paid what taxes were paid. It is true that Theophile died in 1881, but he left a widow who is still living and eleven children, all of whom are still living. Some of them are sons and the others married daughters. Theophile lived a part of the time at least in Jefferson county, and it is beyond belief that none of these children had any knowledge of this Texas land, and of Theophile's ownership of an interest in it (unless he had parted with his title), and of Derneuville's claim that he had acquired Theophile's interest, which, as one witness testified, was "generally talked in the family." Emile lived until 1904, returning to Louisiana, where he died, and from the position of general manager of the property, about 1881, he ceased to have anything to do with it. He must have known of Derneuville's claim. The absolute silence of Emile, of his five children, still living, and of all of Theophile's children during all of these years, in the face of Derneuville's assertion of title, consistent with his acquisition of the interests of Emile and Theophile, and inconsistent with any other hypothesis, strongly supports the presumption of a deed from them or the lawful acquisition of their title. Other facts and circumstances are shown in the court's findings herein quoted, all of which are consistent with Derneuville's claim and difficult of explanation on any other hypotheses. We are of the opinion that the evidence sufficiently supports the court's conclusion, and the first, second, sixth, and eighth assignments of error of appellants presenting this question, with the several propositions thereunder, should be overruled.

[8] The case was tried without a jury. There was no reversible error in the admission in evidence, over the objection of appellants, of the testimony of the witness Hamshire that the "talk in the family," meaning the Broussard family, was that Theophile had sold his interest to Derneuville Broussard. This evidence was contemporary with, and explanatory of, Derneuville's claim of title, and served also as a circumstance to show knowledge of such claim on the part of Theophile's heirs. The point is presented by the third assignment, which is overruled.

[9] The proposition under the fourth assignment of error that parol testimony, when objected to, cannot be offered to prove a sale of land in this state, has no application to a case of this kind, where circumstances are relied on to support a presumption of a deed. The question referred to in the fifth assignment was not leading, nor does it call for conclusions of the witness. The testimony objected to is of the same character as that referred to in the third assignment, and there was no error in admitting it.

[10] Azema Broussard was one of the daughters of P. O. Broussard. She was dead

at the time of the execution of the deed by the other children and grandchildren, to Derneuville Broussard in 1897. She left four children, one of whom died without issue, and one of whom died leaving issue, two children living, all parties interveners. One of such children was Celema Broussard, who was deaf, dumb, and blind but of sound mind, and about 45 years of age at the time of the execution of the deed to Derneuville in 1897. She died unmarried in 1899, and the other descendants of Azema Broussard are her heirs. This deed is signed "Celema Broussard per Savenne Le Blanc, curator." It was not shown that Celema Broussard was present at the execution of this deed or had any knowledge of it. No explanation was offered as to why Savenne Le Blanc signed the deed as her curator. By proper assignment of error the heirs of Azema Broussard complain of the action of the court in holding that this deed passed the title to Celema's interest in this land. The parties all lived in Louisiana, where the deed was executed. Under the civil law which largely prevails in that state, the office of curator is largely the same as guardian in this state. It is defined as "a guardian, one appointed to take charge of the estate of a minor, a lunatic, a spendthrift, or other person not regarded by law as competent to administer it himself." Black's Law Dictionary. No authority was shown for the execution of the deed by Savenne Le Blanc as curator or guardian of Celema. No evidence was offered at all on this point except the production of the deed so signed. The deed was not binding upon her and was insufficient to pass her title. Terrell v. Martin, 64 Tex. 121; Tucker v. Murphy, 66 Tex. 355, 1 S. W. 76. The fact that it was signed by her curator contradicts any presumption that he merely acted as her amanuensis in signing her name, at her request, even if such presumption could be indulged in the absence of any evidence that she was present and knew of the execution of the deed. The case does not come within the rule announced in the cases cited by appellee in answering this assignment. Jansen v. McCahill, 22 Cal. 563, 83 Am. Dec. 84; Lewis v. Watson, 98 Ala. 479, 13 South. 570, 22 L. R. A. 297, 39 Am. St. Rep. 82; Gardner v. Gardner, 5 Cush. (Mass.) 483, 52 Am. Dec. 740; Reinhart v. Miller, 22 Ga. 402, 68 Am. Dec. 506.

[11] Appellee's contention that the failure to object to the introduction of this deed by the heirs of Celema Broussard claiming her title bars them from making the objection here made is not sound. The objection is as to the legal effect of the deed, as conveying Celema's interest. Without other evidence than the mere naked deed, it was insufficient to convey her title, and the court erred in holding otherwise. Her interest appears to be ⅛ of ⅛, or 1/24, of which the intervenors, Elodie Le Blanc, the sister of Celema, is entitled to recover one-half, and Aurelia and Adam Thibaudeauz, children of Celeste Broussard, another sister, deceased, would be entitled, between them, to one-half. The judgment will be reformed accordingly.

[12] By separate brief the plaintiffs Ellen Craigen and Odelia Carouthers, who claim only part of the interest of their mother in the community estate of herself and Derneuville Broussard, complained of the conclusion of the court that the interests acquired by Derneuville by the deed of 1894 from Delzinde Broussard and others was his separate property. The court held that the interests of Theophile and Emile acquired by Derneuville was community property of Derneuville and the mother of plaintiffs and gave them judgment for their share, but the other interests acquired by Derneuville from his sisters and their descendants by the deed of September 3, 1894, did not belong to such community estate. Mrs. Broussard died in April, 1893. There is direct evidence to support this as the date of her death, though one of her daughters testified that it was in 1893 or 1894, she did not know which. In either case she died before the execution of this deed by which Derneuville acquired title. The presumption would be that the property was his separate estate. In order to overcome this presumption, appellants were required to show that the title had, in effect, been acquired by purchase prior to the death of their mother, and had been paid for with community funds. There was some testimony that it had been acquired by some sort of an agreement or understanding before the death of Mrs. Broussard; but it was not conclusive nor clear, and the court's conclusion is supported by the evidence.

[13] If this was not so, appellants under their own contention had only an equitable title resting upon the fact that the land was paid for with community funds. The deed conveyed the legal title to Derneuville and was executed some time after the death of the mother of appellants. Jackson was a purchaser for value, and the burden rested upon appellants to show that he had notice of all the facts constituting their equitable title.

[14] This was not attempted to be shown, and, if their contention be true, Jackson's legal title would be superior to their equity. Biggerstaff v. Murphy, 3 Tex. Civ. App. 363, 22 S. W. 769; Johnson v. Newman, 43 Tex. 628.

The assignment of error of plaintiffs appellants as to the taxation of costs is without merit and is overruled.

[15, 16] The deed of 1897 in the body of the deed names Emerante Broussard as one of the grantors. She was dead at the time of its execution. It is signed by certain of her heirs who are not named in the body of the deed. The court held that the deed was not binding on the heirs of Emerante and gave them judgment for their mother's one-eighth

interest. They do not appeal. Defendant Jackson attempted to prosecute an appeal against them by excepting to the judgment and giving notice of appeal; but his appeal bond, which was necessary to bring the heirs of Emerante Broussard into this court, they not having appealed from the judgment, was not filed within the time required by law, and the said heirs have filed a motion to dismiss said appeal as to them, on this ground. This motion must be sustained. If, however, the question had been properly presented, the contention of defendant Jackson could not be sustained. The fact that Emerante Broussard is named as one of the grantors in the body of the deed and that her interest is to be conveyed, she being dead, would not distinguish this case from the general doctrine, which is well settled in this state, that a deed is not binding upon one who signs it but who is not named in the body of the deed as one of the grantors. Stone v. Sledge, 87 Tex. 49, 26 S. W. 1068, 47 Am. St. Rep. 65; Thompson v. Johnson, 24 Tex. Civ. App. 250, 58 S. W. 1030. The rule is different in some of the states. Sterling v. Park, 129 Ga. 309, 58 S. E. 828, reported also in 13 L. R. A. (N. S.) 298, 121 Am. St. Rep. 224, 12 Ann. Cas. 201. An extensive note to this report collates the authorities showing that the weight of authority is in favor of the rule stated in the Texas cases cited. However, the appeal having been dismissed, the question is not before us for decision.

[17, 18] It remains only to dispose of the contention of defendant Jackson that he was an innocent purchaser for value and without notice that the interests of Emile and Theophile Broussard, conveyed to him by Derneuville, were community property of Derneuville and his then deceased wife, and that the court erred in rendering judgment in favor of the plaintiffs Craigen and Carouthers for their mother's interest therein. We think this contention cannot be sustained. Derneuville had no deed to these interests. Jackson was affected with notice that he acquired them during the life of his wife, who did not die until 1897. The presumption would then be that the property was community. Jackson knew that Derneuville had been married, as several of his children joined in the deed to him. He was then bound to take notice of the fact that the plaintiffs were children of Mrs. Broussard and entitled to an interest in their mother's half of the land. Hill v. Moore, 85 Tex. 335, 19 S. W. 162. The court did not err in the matter complained of.

It follows that the judgment should be reformed as indicated as to the interest of Celema Broussard, and as so reformed it should be affirmed, and it is so ordered. The costs of the appeal will be taxed against appellants, the interveners, except the heirs of Celema Broussard as herein named.

Reformed and affirmed.