**DUNCAN v. GRAGG et al.   (No. 8169.)**

(Court of Civil Appeals of Texas. Galveston. April 21, 1922. Rehearing Denied May 25, 1922.)

1. **Trespass to try title ⊚⇒12—Wrongful entry gives no right to recover against parties without title.**

A wrongful entry on the premises in dispute, subsequently terminated by proceedings in forcible entry and detainer, gives the parties making the entry no prior possession sufficient to enable them to recover in trespass to try title as against others in possession who had no title.

2. **Descent and distribution ⊚⇒71(6)—Recital administrator was relative is not evidence he was an heir.**

A recital in an application for appointment as administrator of the estate of a landowner that the applicant was a relative of the owner is insufficient to sustain a finding that he was the owner's heir.

3. **Adverse possession ⊚⇒104—Unknown heirs not presumed to have executed lost deed.**

Where there was no evidence tending to show who were the heirs of a deceased landowner or where they resided, so that there was nothing to show that they acquiesced in the holding of the title and possession of the land by the administrator, there was no presumption that the administrator held title under a lost deed from the heirs, though 80 years had elapsed since the death of the owner.

4. **Appeal and error ⊚⇒1010(1)—Finding against presumption of lost deed held supported by evidence, and binding on appeal.**

Even if evidence that an administrator and his successors had claimed the property for more than 80 years after the death of a former owner without any adverse claim by the heirs of the owner would be sufficient to sustain a finding of a lost deed by the heirs to the administrator in the absence of any evidence from which acquiescence by the heirs could be inferred, such evidence does not require a finding of a lost deed by the trial court, and his finding there was no such deed is binding on appeal.

5. **Adverse possession ⊚⇒84—Good faith of grantor does not affect color of title.**

Whether or not defendants' grantor believed, when he executed the deed under which defendants claimed, that the land in controversy belonged to his grandfather, his good faith could not affect the genuineness of his deed or its availability as color of title.

6. **Adverse possession ⊚⇒46—Not interrupted by wrongful dispossession where possession was regained within reasonable time.**

Adverse possession under color of title, within the five-year statute of limitations, is not interrupted by a wrongful entry upon such possession during the five-year period, where the ousted possessor within a reasonable time instituted forcible entry and detainer

proceedings, as a result of which he regained possession of the property.

Appeal from District Court, Leon County; Carl Harper, Judge.

Trespass to try title by C. J. and W. F. Duncan against J. R. Gragg and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Watson & Dashiell, of Centerville, B. D. Dashiell, of Jacksonville, and John T. Duncan, of La Grange, for appellants.

S. W. Dean, of Navasota, Joe H. Seale, of Centerville, and Campbell & Sewell, of Palestine, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title brought by appellants against the appellees, the land in controversy being a tract of 333 acres on the Thomas Collinham one-third league in Leon county. In addition to a general demurrer, special exceptions, and plea of not guilty, the answer of defendants contains a plea of limitation of five years. In reply to this plea, the plaintiffs by supplemental petition pleaded that they were in actual peaceable possession of the land in controversy at a date within less than two years from the date of the filing of this suit, and were illegally and wrongfully dispossessed by the defendants. They further pleaded that the deed under which defendants claim title "is a base fraud," and alleged facts showing the grantor of defendants was not, as he claimed to be, the heir of the original grantee of the survey. The trial in the court below without a jury resulted in a judgment in favor of the defendants.

The facts of the case are sufficiently stated in the following findings of fact filed by the trial judge:

"(1) That the land in controversy is a part of one-third league situated in Leon county, Tex., patented to the heirs of Thomas Collinham by patent dated February 16, 1847.

"(2) That prior to the issuance of the patent, and on April 24, 1847, McLin Bracy was appointed by probate court of Austin county, Tex., administrator of the estate of Thomas F. Callahan; but I find the bond given by said Bracy as such administrator was signed by only one surety, and that said Bracy never subscribed to or filed his oath as such administrator. That no application was ever made by said Bracy as administrator, or otherwise, or by any one else, to the probate court of said Austin county, Tex., for the sale of any lands, or other property, belonging to the estate of said Thos. F. Callahan, and no order of court was made authorizing any sale of lands or other property, and no report of any sale was either made to or confirmed by said court. That on March 2, 1838, on claim of said McLin Bracy, administrator of the estate of Thomas Callinham, the board of land commissioners of Austin county issued a certificate for one-third of a league of land to the estate of Thomas Callinham, deceased. The report of the clerk of the board of land commissioners for March, 1838, giving a list of the certificates issued by the board for the county of Austin, shows the entry on said report of the above certificate to be 'McLin Bracy, Admin. of the Estate of T. Callinham, D.' The certificate and the report of its issuance have the name of Callinham and not Collinham or Callahan. The board of commissioners appointed to make investigation for the purpose of preventing fraudulent land certification in its report received in the General Land Office on March 25, 1840, recommended said certificate as genuine, the entry referring to the certificate being 'McLin Bracy, Admir. of Thomas Callinhan' ⅓ league,' the ditto marks thereon showing the date of the certificate to be March 2, 1838. The board gave the name as Thos. Callahan. The original certificate has on it, '1 file 93 Robertson county 1st class, H. R. Certificate Thos. Collinham.' and the field notes are indorsed, '2 F. 93 Robertson county 1st class field notes ⅓ league. Thos. Collinham. The land was patented to the heirs of Thos. Collinham, and not to the estate of Thos. Collinham, on February 16, 1847. There was evidence that no patent to any lands was ever issued to the estate or to the heirs of either 'Thos. Callahan, Thos. Callinham, or Thos. F. Callahan.' I, therefore, conclude that Thos. F. Callahan, Thos. Callinham, and Thos. Collinham were one and the same person.

"(3) I find that the title to the land in controversy has never passed out of the heirs of patentee.

"(4) I find that plaintiffs claim title to the land under a deed from McLin Bracy, acting in his individual capacity, to George I. Duncan, the father of plaintiffs, of date September 22, 1855, but at the time of said conveyance said Bracy had no title to the land described in the deed; and that plaintiffs failed to connect said McLin Bracy, or themselves, with the sovereignty of the soil, and I further find that the facts, as given in evidence, are insufficient to presume the existence of a deed or grant out of the heirs of the original patentee into McLin Bracy, plaintiffs, or any one else; that plaintiffs and their father have paid all taxes due on said land.

"(5) I find that defendants claim title to the land in controversy under a deed duly and properly executed, and which deed is genuine and is not a forged deed, by A. B. Collingham to defendant J. R. Gragg dated November 10, 1910, and recorded in deed records of Leon county, Tex., on February 29, 1912, and which deed properly describes the land sued for and is sufficient in form to convey the land. But I find that said A. B. Collingham is not an heir of the original patentee, whether their correct name be Collinham, Callaham or Callahan, and that said A. B. Collingham had no title to the land described in the deed to Gragg.

"(6) I find that prior to March 15, 1912, when J. R. Gragg conveyed an interest in the land to J. W. Braton, said Gragg and those holding under him had fenced the land with a barbed-wire and hog-proof wire fence, and had the actual occupancy and possession thereof; that prior to the fencing and taking pos-

session of said land by J. R. Gragg as aforesaid no one had the actual possession or occupancy thereof.

"(7) I find that in February, 1912, the defendants completed and closed a fence around the land, and took actual possession, held, used, and enjoyed the same, and had peaceable and adverse possession thereof until some time during the year 1915, when the plaintiffs herein entered upon said land and built a fence around the land in controversy by building two strings of fence of their own and joining the fences of the defendants, which, together with the fences of the adjoining owners, completely inclosed the land in controversy, and which inclosure ousted the defendants of their prior possession, which was in November or December, 1915; that within a reasonable time thereafter defendants brought a forcible entry and detainer suit against the tenants of plaintiffs in justice court at Oakwood in Leon county, Tex., and in the precinct in which the land is situated, which suit was prosecuted with diligence, and judgment was rendered, finding the tenants of plaintiffs guilty; thereupon a writ of restitution was by said court directed to issue, from which judgment the tenants of the plaintiffs prosecuted their appeal to the county court of Leon county, Tex., and upon a trial in said county court of the issues involved the tenants of plaintiffs were again found 'guilty,' and thereupon a writ of restitution was issued by the county court, and under said writ of restitution these defendants were again placed in possession of said land in controversy; that the plaintiffs herein employed and paid attorneys to represent their tenants in both courts, and that the plaintiff, W. F. Duncan, personally attended all of the trials in both courts; and that during the trials in both courts of the forcible entry and detainer suit the plaintiffs herein were in actual possession of the land in controversy by and through their tenants.

"(8) I find that from the time plaintiffs herein entered upon said land until they were ousted by said writ of restitution, they by and through their tenants cleared and cultivated some 5 or 6 acres of the land in controversy.

"(9) I find that from the time the land was conveyed to the father of these plaintiffs up to date, plaintiffs and those under whom they claim have paid all taxes due on said land each and every year; and I further find that from the time said land was conveyed to the defendant J. R. Gragg that he and those claiming under him have paid all taxes due on said land each and every year.

"(10) I further find that within a few days after the trial in the county court of Leon county, Tex., of the forcible entry and detainer suit, these plaintiffs filed this suit in the district court of Leon county, Tex."

The conclusions of law of the trial court upon these facts were that plaintiffs, having failed to show title in themselves, were not entitled to recover, but that defendants were not entitled to judgment vesting title in them under their plea of limitation, because of the break in their peaceable possession caused by the entry thereof of plaintiffs.

The appellants assail the judgment upon the following grounds:

First. Because the prior possession of appellants entitled them to recover against appellees, who, it is contended, are shown to be mere naked trespassers.

Second. Because the evidence was sufficient to establish the fact that McLin Bracy was the heir of Thomas Callahan, who was entitled to the certificate upon which the land was patented, or that Bracy acquired title to the land through a lost deed from the heirs of Thomas Callahan.

Third. Because the court erred in not holding that the deed under which appellees claim was a forgery, and that appellees were mere naked trespassers upon the land.

There is no merit in any of these complaints against the judgment.

[1] On the question of appellants' right to recover upon their so-called prior possession, the undisputed evidence shows that they never had possession of the land prior to the time that appellees purchased it and took possession under the deed from Collinham. There is nothing in the evidence to raise an issue of the good faith of the appellees in purchasing the land and taking the deed thereto under which they entered. When their possession under this deed was invaded by the appellants they resorted to the courts, and obtained a judgment in a court competent jurisdiction, ousting appellants from the possession obtained by their forcible entry. It seems to us that the unsoundness of the contention that this wrongful and illegal entry and possession by appellants could give them the right to recover in this suit, regardless of whether they have title to the land, is too clear for argument.

Appellants' second objection to the judgment is equally untenable.

[2, 3] There is no evidence tending to show that McLin Bracy was the heir or one of the heirs of Thomas Callahan. The recital in the application made by Bracy for appointment as administrator of Callahan's estate that he was a relative of Callahan is insufficient to sustain a finding that Bracy was Callahan's heir. Sweeten v. Taylor (Tex. Civ. App.) 184 S. W. 693. Nor do we think that the fact that no one has ever appeared to challenge the title of McLin Bracy and those who hold under him is sufficient to justify a finding that Bracy by a lost deed acquired the title of the heirs of Thomas Callahan. We do not think the evidence raises this issue.

The heirs of Thomas Callahan are unknown. There is no evidence tending to show who were such heirs, or where they resided. Such being the state of the evidence, the most essential fact necessary to establish execution of a lost deed by circumstantial evidence, that is, the acquiescence by the person who held the title and from whom a

deed is sought to be presumed in the adverse possession or assertion of ownership, is wholly wanting. Acquiescence by the former owner in the adverse claim and acts of ownership is the strongest circumstance in support of the presumption of a grant from such owner, and unless this acquiescence can be reasonably inferred from the evidence no grant can be presumed. Walker v. Caradine, 78 Tex. 491, 15 S. W. 31.

[4] If, however, the evidence in this case could be held sufficient to raise the issue of the execution by the heirs of Thomas Callahan of a deed conveying the land to Bracy, it certainly cannot be held that the evidence required such a finding by the trial court, and, the issue being purely one of fact, this court is bound by the finding of the trial court thereon. Le Blanc v. Jackson (Tex. Civ. App.) 161 S. W. 60; Taylor v. Watkins, 26 Tex. 688; Boone v. Miller, 73 Tex. 557, 11 S. W. 551; Herndon v. Vick, 89 Tex. 469, 35 S. W. 141.

The undisputed evidence abundantly established the execution by A. B. Collenham of the deed under which appellees claim, and the issue of its forgery is not raised by either pleading or evidence.

[5] The trial court finds, and the evidence sustains the finding, that Thomas Callahan, to whom the certificate was issued and whose heirs were the grantees in the patent, was not the grandfather of A. B. Collenham, but this finding does not make the deed of A. B. Collenham a forgery, nor does it contradict the affidavits of Collingham and others to the effect that Thomas Collingham, the grandfather of A. B. Collingham, lived and died in Austin county, Tex., prior to the issuance of the patent to the land in controversy to the heirs of Thomas Collingham, and the father of A. B. Collingham often spoke of lands which his father owned in Leon county, Tex. A. B. Collingham may or may not have believed when he executed the deed to appellees that the land in controversy belonged to his grandfather, but his good faith in his claim could not affect the genuineness of his deed.

We are of further opinion that the trial court erred in holding that the evidence was insufficient to sustain appellees' plea of limitation of five years.

[6] The undisputed evidence shows that all of the requirements of the five-year statute of limitation were complied with by the appellees, and unless the conclusion of the trial court that appellees' peaceable possession of the property was broken or suspended during the time appellants had possession through their wrongful entry and detainer of possession is sound, appellees' plea of limitation should be sustained.

The trial court having found that within a reasonable time after appellants' entry upon and possession of the land was discovered by appellees they instituted proper legal proceedings to oust appellants, there was no acquiescence by appellees in appellants' claim of title or their right to the possession of the property Upon these facts the law seems to be well settled that this wrongful entry and detainer by the appellants cannot be regarded as such a break in appellees' possession as would defeat their claim under the statute of limitation. The rule is thus stated in Corpus Juris, vol. 2, p. 98, and Cyc. vol. 1, p. 1012:

"The intrusion of a trespasser will in no case interrupt the continuity of adverse possession unless continued for such a length of time that knowledge of the intrusion is presumed. * * * If they are known, they become assertions of right and operate to break the continuity, unless legal remedies are resorted to within a reasonable time to regain possession and are prosecuted to a successful determination."

"If the claimant acquiesces in the entry and taking possession by a third person who claims to own the land, this will interrupt his adverse possession. * * * But where legal proceedings against the intruder are promptly and successfully prosecuted, there is no interruption of the continuity, and the period during which the possession was interrupted cannot be deducted in computing the length of adverse possession by the claimant."

This rule was applied in Barron v. Barron, 122 Ala. 194, 25 South. 55.

The case of Hornsby v. Davis, 36 S. W. 159, decided by the Court of Chancery Appeals of Tennessee, is exactly in point on the question presented, and supports the doctrine here announced. This is a well-considered opinion, and contains a correlation of many able authorities supporting it, among which are Wood on Limitation of Actions, §§ 269, 270; 1 Am. & Eng. Ency. of Law, pp. 273, 274; and the Supreme Court of Tennessee.

We think the rule announced in these authorities is sound, and should be followed by our courts.

To permit appellants in this case by their unlawful entry and detainer of possession of the premises to defeat appellees' claim of title by limitation would violate the equitable maxim that no one should be allowed to profit by his own wrong.

It follows from the conclusions above stated that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.