## KIRBY PETROLEUM CO. v. HOUK et al.*
### No. 9623.

Court of Civil Appeals of Texas. Galveston.
Feb. 12, 1932.

Dissenting Opinion Feb. 23, 1932.

Rehearing Denied May 26, 1932.

On Motion to Correct Opinion and for Rehearing June 14, 1932.

Pleasant F. Graves, of Houston, for plaintiff in error.

*Writ of error granted.

A. D. Dyess, of Houston, E. B. Pickett, Jr., of Liberty, and Stewart & De Lange and A. J. De Lange, all of Houston, for defendants in error.

PLEASANTS, C. J.

This is an action of trespass to try title brought by appellees, defendants in error, against appellant, plaintiff in error, to recover, title and possession of a tract of 5 acres of land, a part of the Henry Griffith league in Chambers county. Plaintiffs' petition is in the statutory form for action of trespass to try title, and sufficiently describes the 5 acres of land for which they sue. The defendant answered by a general demurrer, general denial, and plea of not guilty, and specially pleaded limitation of three, five, ten, and twenty-five years. Upon the trial in the court below with a jury the court only submitted five questions to the jury, which will be hereafter shown, and upon return of the verdict in response to these. questions, judgment was rendered in favor of the appellees for the 5 acres of land claimed by them.

The following facts are disclosed by the record: D. J. Lawrence and wife, A. M. Lawrence, are the common source of the title under which both parties claim the land. On January 16, 1905, D. J. and A. M. Lawrence conveyed to appellee R. W. Houk, for a recited consideration of $1, a tract of land described as follows: "Beginning at the southwest corner of the Daniel J. Lawrence 350-acre home tract in the Henry Griffith league in said Chambers County, Texas, being the same land conveyed to Daniel Lawrence by B. F. Wilburn and H. Wilburn; thence, easterly along the south line of said 350-acre tract to a point south of the southwest corner of the C. E. Lawrence 50-acre tract in said 350-acre tract; thence, north far enough so that a line run westerly parallel with the south line of said 350-acre tract to the west line of same; thence, to place of beginning, will contain five acres of land; thence, westerly parallel with the south line of said 350-acre tract to the west line of same; thence, southerly along the west line of same to the place of beginning, containing five acres of land."

This deed was filed for record in the office of the county clerk of Chambers county on September 6, 1909, and was duly recorded in the deed records of the county. Thereafter by direct or mesne conveyance from Houk, the other appellees acquired certain undivided interests in this land, and together with R. W. Houk have and hold the title so acquired from Lawrence unless such title has been lost by the adverse possession and claim of appellant. The Old River Company, a rice farming corporation, on December 29, 1921, conveyed to appellant "all the mineral rights and estates (less a reserved ⅟₃₂ roy- alty)" in several tracts of land in the Henry Griffith league, one of which, a tract of 150 acres, includes the 5 acres in controversy. This deed was filed for record on February 27, 1922, and duly recorded in the deed records of Chambers county.

On December 6, 1923, the Old River Company, by deed filed for record on December 17, 1923, and recorded in the deed records of the county, conveyed to appellant Kirby Petroleum Company the 150-acre tract described in the mineral deed above mentioned and also the ⅟₃₂ royalty interest reserved in the mineral deed. After its purchase from the Old River Company the appellant in January, 1924, took possession of the 150-acre tract of land and has since that time held exclusive adverse possession, using, occupying, and cultivating the same and paying all taxes thereon as they became due for the five years next succeeding its purchase of the land. This suit was filed October 25, 1929. Mr. R. W. Houk testifies in substance that after he was informed in 1921 that the Old River Company was in possession of the 5-acre tract of land or at least a part of it and might be claiming it by limitation, he went to Dr. Collier, the president of the Old River Company, to learn if the company would claim the land, and that Dr. Collier stated to him that the Old River Company had not and would not claim the 5 acres by limitation, and that he (Houk) then told Dr. Collier that it would be agreeable for the Old River Company to continue to use the land if it would not claim it by limitation and Collier agreed to hold the land with that understanding, and would send Houk a written memorandum of the agreement, and Houk left his deed with Collier to enable him to prepare the written, memorandum. Dr. Collier fully corroborated Mr. Houk as to the substance of this verbal agreement. He further testified:

"I have seen Mr. Houk frequently all these years, occasionally, but I never had any other conversation with him about it until since they have been drilling down there. From the time he left that deed with me until the actual controversy arose about the rights there some time last year, I had never indicated that my attitude toward him and his title was any different than what I said in that conversation. Whatever I said in that conversation expressed my attitude, and that remained my attitude towards him until now."

"Nothing occurred that indicated that the Old River Company's attitude with reference to this claim was different from what.I said my personal attitude was; there has been nothing occurred because I just put the deed away and forgot about it. I was president of the Old River Company. * * * I am sure that he knew I was president of the company. I am the man that he would

have gone to to find out about an affair of this kind."

The trial court submitted the following special issues to the jury, which were answered as shown under each issue:

"Question No. 1. Did D. J. Lawrence ever claim as his own the five-acre tract of land in controversy after he executed the deed of date January 16, 1905, whereby he conveyed to R. W. Houk said tract of land? (Answer 'Yes' or 'No,' as you find the fact to be.) Answer: 'No.'"

"Question No. 2. If you answer 'No' to the foregoing question, then you need not answer the next succeeding question No. 2, but if you answered 'Yes' to said question No. 1, and only in that event, then answer the following question: During what period of time did D. J. Lawrence claim as his own the said five-acre tract of land? (In answering this question, you will give the date when such claim, if any, began and when it ended.) Answer: Not answered."

"Question No. 3. Did George W. Collier, on the occasion of Houk's visit to his office, say substantially to Houk that he (George W. Collier) and the Old River Company had not claimed and would not claim by limitation the said five-acre tract of land? (Answer 'Yes' or 'No,' as you find the fact to be.) Answer: 'Yes.'"

"Question No. 4. Did R. W. Houk, on the same occasion, say substantially to George W. Collier that it would be agreeable to Houk for the Old River Company to continue to use the said five-acre tract of land if said company would not claim the land, and did George W. Collier, upon that occasion, agree to act in accord with that understanding and say that he would send Mr. Houk a written memorandum or statement to that effect? (Answer 'Yes' or 'No,' as you find the fact to be.) Answer: 'Yes.'"

"If you have answered 'Yes' to either special issues No. 3 or 4, and only in that event, you will answer the following:

"Question No. 5. Did the conversation referred to in the preceding questions Nos. 3 and 4, between Mr. Houk and Dr. Collier, occur in 1921 or 1923? (Answer by naming the year.) Answer: '1921.'"

At the request of plaintiff in error the trial court filed the following findings of fact and conclusions of law:

### "Findings of Fact.

"(1) I find from the undisputed evidence that the defendant, Kirby Petroleum Company, did not have any actual notice or knowledge of the alleged tenancy relationship or of the conversation or agreement inquired about in this question until some time in the latter part of the fall of 1929.

"(2) In answer to question No. 2, I find from the undisputed evidence that the defendant first had actual notice or knowledge that plaintiffs were claiming the land sued for herein, or an interest therein, in the latter part of the fall of 1929, and that at the same time defendant first received actual notice of the deed in question. I further find from the undisputed evidence that the abstracts of title examined by the defendant in connection with the conveyance to it of said property by Old River Company in 1923, as well as supplemental abstracts thereafter obtained and examined by it covering said property, did not contain the said deed from D. J. Lawrence and wife to R. W. Houk, or any of the other instruments in plaintiffs' chain of title, although said deed to Houk, executed and delivered in 1905, was duly filed for record in the Deed Records of Chambers County, Texas, in 1909, and that, therefore, defendant had constructive notice of said deed notwithstanding the failure of the abstractor to include the same in defendant's abstract of title.

"(3) I find from the undisputed evidence that the defendant established five years limitation title under the statute to the land in controversy by virtue of its own acts following said deed to it from Old River Company, but for the fact that the jury found in answer to special issues No. 3 and No. 4 in the main charge of the court that the possession of Old River Company, the defendant's grantor, was that of a tenant and was permissive and not adverse to plaintiffs, such finding rendering the possession of defendant likewise permissive and not hostile or adverse to plaintiffs, the possession of the defendant being practically the same as that of Old River Company, and the evidence being insufficient to show any repudiation of such tenancy relation, although the defendant had no notice or knowledge of such tenancy relationship between plaintiffs and its said grantor prior to the completion of such five-year period, unless notice of such relationship be charged to defendant by reason of the recording of the deed from D. J. Lawrence and wife to plaintiff Houk.

### "Conclusions of Law.

"The jury having found in answer to special issues No. 3 and No. 4 that the possession of the land claimed by plaintiffs herein by Dr. George W. Collier and Old River Company, grantors in defendant's chain of title, was not adverse or hostile to plaintiffs, and that Old River Company was plaintiffs' tenant, I conclude that, by reason thereof, the possession of defendant was not adverse or hostile to plaintiffs notwithstanding its lack of actual notice or knowledge of such tenancy relationship between the plaintiffs and its grantor, and that consequently defendant is not entitled to judgment under its plea and defense of five years limitation."

■ These findings of fact by the trial court, the case having been submitted to a jury on fact issues, are not required by the statute and cannot be given the force and effect of findings made by the court in cases not submitted to a jury, and therefore are not inserted in this opinion as entitled to the same consideration as fact findings in a case submitted to the court without a jury, but are merely copied as a correct statement of the facts shown by the undisputed evidence and as the conclusions of the court upon the facts found by the jury.

The deputy collector of taxes for chambers county testified: "My name is W. K. Finley. I am Deputy Tax Collector, with the county here; I have been in the Tax Collector's office or connected with it since 1915, I believe, ever since February, 1915, I think. I have my tax receipt records showing the payment of taxes, State, county and other taxes, assessed and collected through my office on the Kirby Petroleum Company lands in this county. My tax receipt records show their taxes rendered and paid for by the Kirby Petroleum Company on the Henry Griffith league, 840.38 acres. That receipt is dated January 30, 1925. That covered all State, county and school taxes that were assessed for that section. That receipt is numbered 164. My records show for 1925, the same acreage, 840.38; that was paid January 30, 1926, and the receipt is numbered 138. That was for the land in the Griffith league only. For 1926, my records show 830.38. That was paid January 31, 1927, and the receipt is numbered 170. I do not know why the difference in acreage between 830 and 840. 1927 shows 840. That was paid January 30, 1928; the receipt is numbered 177. 1928 records show 840.38 acres. That was paid January 31, 1929, the receipt being numbered 157. 1929 records show 840.38 acres. That was paid January 15, 1930; the number of that receipt is 1033. We get the amount of taxes and the acreage assessed or rendered on these receipts from the tax assessor's rolls; we make that up from the tax assessor's rolls which are furnished us, and to make out these bills and receipts for taxes that have been paid by the Kirby Petroleum Company during these years on this acreage, that is taken from the tax assessor's rendition records."

The undisputed record evidence shows that the deed under which appellant claims to have acquired title by limitation to the 5 acres in controversy conveyed to it some fifty tracts of land in several original surveys, twelve of which tracts were out of or on the Henry Griffith league, and one of these Griffith league tracts of 150 acres includes the 5-acre tract in controversy. The entire acreage in the Griffith league conveyed to appellant by this deed was 840.38. While the number of acres on the Griffith league rendered for taxes by appellant for the year 1926, as shown by the tax assessor's and collector's records, was only 830.38, such discrepancy is shown by the uncontradicted evidence to have been due to the fact that in 1925 appellant sold a tract of 10 acres on the Griffith league, that was separate and distinct from, and included no part of, the 5 acres in controversy.

■ We cannot agree with appellees that this evidence does not show a sufficient compliance with the provisions of the five-year statute of limitation in regard to the payment of taxes by a claimant of land under that statute. Appellees' contention that the rendition and payment of taxes by appellant upon all of the land in the Griffith league conveyed to it by the Old River Company, including the 5-acre tract in controversy, does not entitle appellant to prescribe under the five years' statute of limitation because the 5-acre tract was not separately rendered and the taxes thereon paid separately from the larger tract of which it is a part, is unsound. The record shows that all of the 150-acre tract of which the 5 acres was a part, together with a number of other tracts conveyed to appellant by the same deed of conveyance, had been exclusively occupied and used by appellant's vendor and by appellant as a rice farm. When appellant rendered and paid the taxes on all of the land on the Griffith league conveyed to it by the deeds under which it claims, and which was so occupied and used by it, it fully complied with the requirements of the statute in this respect. Guerguin v. City of San Antonio, 19 Tex. Civ. App. 98, 50 S. W. 140; Moody-Seagraves Co. v. City of Galveston (Tex. Civ. App.) 43 S.W.(2d) 967.

■ It is hardly necessary to cite authority to sustain the proposition that appellant having held exclusive adverse possession of the land for more than five years before the suit was filed, under duly recorded deeds, and having paid all taxes thereon as they accrued, acquired title to the land under the five years' statute of limitation, regardless of whether its grantor had any title. This has long been the settled law of this state. The only restriction upon the right of one claiming title by limitation under the five years' statute is that the statute shall not apply to one who deraigns title through a forged deed or who is "claiming under a forged deed, or deed executed under a forged power of attorney." Article 5509, R. S. 1925.

The facts which constitute these restrictions are wholly absent from this case. Some of the many cases sustaining the rule above stated that when the other requirements of the statute, are fulfilled, the title of the grantor in the deed under which the claimant holds, and the good faith of the claimant in taking possession under the deed are immaterial, are: Hunton v. Nichols, 55 Tex. 217; Roseborough v. Cook, 108 Tex. 364, 194

420

S. W. 131; Holland v. Nance, 102 Tex. 177, 114 S. W. 346; Hutchison v. Dwyer (Tex. Civ. App.) 289 S. W. 1021; Houston Oil Co. v. Jones, 109 Tex. 89, 198 S. W. 290; McDo-nough v. Jefferson County, 79 Tex. 535, 15 S. W. 490; Davis v. Howe (Tex. Com. App.) 213 S. W. 609. If knowledge of the fact that his grantor in the deed under which defendants claim had previously conveyed the land, or the defendant's knowledge of fraud in the execution of the deed by his grantor would destroy defendant's right to acquire title under the five years' statute, there is no evidence of such knowledge on the part of appellant. While it is true that the prior deed under which appellees claim was of record at the time appellant took its deed from the Old River Company, and appellant was charged with constructive knowledge of that deed, and could not claim the rights of an innocent purchaser, it had no actual knowledge of such deed, and the undisputed evidence shows that it had no knowledge of the agreement between Mr. Houk and Dr. Collier that the Old River Company would hold the 5-acre tract of land as a tenant at will of appellees. If the evidence had shown any actual or legal fraud on the part of the Old River Company or its president, Dr. Collier, in conveying the land to appellant, it could not be charged with the burden of such fraud. Davis v. Howe, supra; Duncan v. Gragg (Tex. Civ. App.) 242 S. W. 491; Ludtke v. Smith (Tex. Civ. App.) 186 S. W. 266.

■It is clear to us that the conclusions of the trial court that the findings of the jury to the effect that in 1921 Dr. Collier, the president of the Old River Company, agreed with Mr. Houk (who was then acting for himself and the other appellees) that the company would not claim the 5 acres of land by limitation but would continue to occupy and use it as the tenant at will of appellees, prevented the subsequent possession and use of the land by the appellant under its deeds from the Old River Company from becoming adverse to appellees, is unsound and not supported by authority. In the first place, as we have before stated, appellant had no knowledge of this agreement between Dr. Collier and Houk until a short time prior to the institution of this suit. It purchased the land in 1923 in reliance upon the title shown in the abstract furnished it by the Old River Company which did not contain any mention of the deed to Houk, in 1905, from a remote grantor of the Old River Company, and there is no evidence of any fact within its knowledge which could have put a reasonably prudent person upon inquiry which, if pursued with reasonable diligence, would have given it information of the secret agreement between Houk and Dr. Collier. After its purchase it took exclusive possession and continued to so hold, use, and cultivate the land for more than five years. The fact that the whole of the large farming property purchased by appellant from Old River Company was in the main used and cultivated in the same manner as it had been theretofore used by the Old River Company, and that a number of the tenants of the Old River Company remained tenants of appellant, and that Dr. Collier, in 1924 and 1925, as the agent of appellant procured tenants on some of the land for appellant, did not render appellant's possession of the land insufficient to put appellees upon notice of appellant's claim of ownership. Collier never lived on the land and was never in control and possession of any part of the rice farm after its purchase by appellant. There is an entire lack of any evidence tending to show that appellees had any notice that Dr. Collier in 1924 or 1925 as an agent of appellant was procuring tenants for the Old River rice farm. The evidence shows that by deeds placed of record and shown on the abstract furnished appellant by its vendor, the 150-acre tract of which the land in controversy is a part was sold by the appellees' grantors after appellees' deed was executed and that numerous leases were made thereon by the immediate or intermediate grantors through whom the Old River Company obtained its title, and also by the Old River Company. In this situation it devolved upon appellees, in order to suspend the operation of the statute of limitation and defeat the rule of estoppel against them, to use due care and diligence to give notice of their rights in the land, and not blindly rely upon the promise of Dr. Collier, which he forgot to fulfill, to give them a written acknowledgment of tenancy. We think the undisputed evidence in this case, as was said by this court in the case of Griswold v. Comer (Tex. Civ. App.) 161 S. W. 423, shows that the slightest diligence on the part of appellees would have enabled them to learn of the adverse and actively asserted claim and open visible possession of appellant. In this situation every principle of equity protects appellant against the assertion of the secret agreement of tenancy on the part of Dr. Collier.

■While there is no proof of actual knowledge by appellees of the adverse possession of appellant, its possession and claim were so open and visible that appellees must be charged with notice thereof. 2 Tex. Jur. p. 77. The possession and claim of appellant to the land was so open, visible, and notorious as to put the community in which the land was situated upon notice it was holding, cultivating, enjoying, and claiming the land as its own, and appellees must be charged with such notice. Village Mills Co. v. Houston Oil Co. (Tex. Civ. App.) 186 S. W. 785; Billingsley v. Houston Oil Co. (Tex. Civ. App.) 182 S. W. 373.

■The two deeds under which appellant claims only convey the title to the whole of the surface and one-half of the minerals un-

der the land, and the title acquired by its adverse possession and claim to the land is restricted by the terms of the deed to the interests therein described.

The conclusions above expressed require that the judgment of the court below be reversed and here rendered in favor of appellant; that appellees take nothing against it as to the title to the surface of the land in controversy and one-half of the minerals thereunder. The remainder of the judgment is undisturbed.

Reversed and rendered.

LANE, J. (dissenting).

I respectfully dissent from the action of the majority of this court in reversing the judgment of the trial court in favor of defendants in error and in rendering judgment for plaintiff in error, for the following reasons:

(1) The undisputed evidence shows that defendants in error were the record owners of the land sued for in this cause; (2) that the only title to such land asserted by plaintiff in error is a limitation title under the five years' statute of limitations; (3) that Dr. Collier, president and general manager of the affairs of the Old River Company, a corporation, leased from D. J. Lawrence under whom defendants in error hold 350 acres of land which includes the land sued for, in the year 1912; that he (Dr. Collier) in the latter part of the year 1912 or the first part of 1913, put J. W. Smith and Charles Fannette on the premises to farm the land, a part of which was farmed and a part used for pasture purposes. Later, in 1915, Dr. Sheffield as a tenant under the Old River Company, moved upon the premises and farmed parts of the land not theretofore farmed under the Old River lease; that while Dr. Sheffield was living on the land he built a garage next to the public road; that he had a negro house on a part of the land but not on the tract claimed by defendants in error. There was no evidence showing that any change was made in the use of the 5 acres sued for while it was under lease to the Old River Company; it was not shown that any fence or other structure was placed on said 5-acre tract while under such lease. Dr. Collier testified that up to the time the Old River Company conveyed to the plaintiff in error, Kirby Petroleum Company, in December, 1923, there was no notice given of any adverse claim to the 5 acres claimed by defendants in error. He said: "As to whether there was any claim of adverse ownership to those interests, to the * * * 5 acres, asserted by anybody that I know of during that time, I will say that Mr. Houk came to my office and brought me a deed some time in 1923." He said that this occurred before the conveyance of the property was made by the Old River Company to Kirby Petroleum Company by the deed of De-

cember 6, 1923; that Mr. Houk told him that he had a 5-acre tract out of the Lawrence home tract; that Houk showed him the deed and left it with him; that such deed had been recorded; that Houk told him that if we had such 5 acres inclosed, he would like to have a tenant at will agreement from the Old River Company; that he told Houk that they did have it inclosed; that when Houk so told him he told Houk that he would not claim limitation against anybody.

Testifying further, Dr. Collier said: "Following the conveyance of this land by Old River Company to Kirby Petroleum Company, for two years I acted as agent of the Kirby Petroleum Company."

Again he said: "I know I handled those lands for the Kirby Petroleum Company in 1924 and 1925 and W. D. Smith followed me there; it must have been in 1926."

Again he said: "I became president of the Old River Company about 1910, I think, and remained president until it dissolved or went out of business. It ceased doing business, dissolved, or became defunct, or whatever happened to it in 1923. This deed was made in December, 1923; that was the end of the Company. That was part of the winding up of it; that was the final winding up. I was president of it practically all of that time, from 1920 until it dissolved or ceased doing business. I was a substantial stockholder; in fact, I guess I had a majority of the stock. I could not tell you, off-hand, what stock I had in it, but I had more than fifty per cent. In a way, that made me boss; in other words, if anybody talked about the Old River Company down there, they usually meant Dr. Collier, whether they had something good or bad to say; I was pretty well identified with the Old River Company. I was identified in that neighborhood as the representative in control of the affairs of that Company, both as manager, stockholder, and as president."

Testifying further, he said: "Now, back to my expression when I was discussing it with Mr. Houk, that I told him that I had never, personally, made a claim to land by limitation and would not. Evidently I meant that to apply to this five-acre tract, that remark; that is what we were talking about. In other words, Mr. Houk was not alarmed about anything else; he was hunting me up to know whether or not his five acres was in danger; he came to my office and started a conversation about this identical five acres, and in that conversation, when I said I had never claimed any land personally, I certainly meant that I had not claimed this five acres. If I meant by that remark to keep it from applying to me in my capacity as president of the Old River Company, nobody could have made an adverse claim for that Company except me; that Old River head was my head and my head was the Old River head; the directors were concerned, too, but as far

as the Old River Company was concerned, I was the Old River Company, and if that inanimate thing we call the Old River Company had a mental attitude that made it a claimant to this land, I would be aware of it. Nothing occurred that indicated that the Old River Company's attitude with reference to this claim was different from what I said my personal attitude was; there has been nothing occurred because I just put the deed away and forgot about it. I was the president of the Old River Company. Mr. Houk did not discuss with me this proposition and this apparent use of a part of this land in my capacity as president of the Company as well as personally; he never mentioned it as president of the Company. I am sure that he knew I was president of the Company. I am the man that he would have gone to to find out about an affair of this kind. I said before that such an affair as this was a matter that was in my control except where the directors would overrule me, but they never overruled me on this matter, not even to this day."

R. W. Houk, one of the plaintiffs, defendants in error here, testified as follows: "I told Dr. Collier that I understood that the Old River Company was using our five acres, and I showed him the deed to the five acres, and I said: 'We have no objection to the Old River Company using it any way they desire, as long as they do not claim it adversely to us,' and he said, 'No; we have never claimed by limitation.' He said: 'I have never claimed by limitation.' I told him who the owners were and he said: 'Especially I would never claim anything against my friend Wheeles.' Then I asked him if he would give me a written memorandum to that effect; he said he would if I would leave my deed with him, so he could get the description." Testifying further, he said that Dr. Collier told him that the Old River Company would not claim said 5 acres adversely to the plaintiffs.

J. S. Wheless, one of the owners of the 5-acre tract, and one of the plaintiffs, testified that Dr. Collier told him in the year 1920 that the Old River Company would not claim said 5 acres adversely to the plaintiffs.

The jury, in answer to special issues submitted by the court, found that Dr. Collier in the year 1921 said substantially to R. W. Houk that he (Collier) and the Old River Company had not and would not claim by limitation the said 5-acre tract, and that on such occasion Houk said to Dr. Collier that it would be agreeable to him (Houk) for the Old River Company to continue to use said 5-acre tract if said company would not claim it, and that in reply to Houk Dr. Collier agreed to act in accord with such understanding, and he did say that he would send Houk a written memorandum or statement to that effect.

From the facts stated, I conclude that the undisputed evidence shows that Dr. Collier was in possession of the 5 acres of land as the president and general manager of the Old River Company, with full authority to make the agreement found by the jury as having been made by him as above stated; I also conclude that by reason of such agreement the Old River Company became the tenant of Houk and other owners of said 5-acre tract, and continued to be such tenant up to the time it executed its said conveyance to Kirby Petroleum Company, of date December 6, 1923, and for such length of time thereafter as it was held by Dr. Collier, apparently in the same manner as theretofore, without in any manner informing the owners that Dr. Collier, for it, was seeking to attorn to Kirby Petroleum Company. Such attempt on the part of the Old River Company to attorn to Kirby Petroleum Company did not break the continuity of the Old River Company's possession as a tenant of Houk and others. It is well settled that when possession is originally taken and held under the true owner, a clear, positive, and continuous disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner, are indispensable before the statute of limitation can be put in motion. Without this the length of the possession is immaterial and does not affect the title. Where the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, until a disavowal of tenancy is brought home to the landlord. In other words, that a tenant of the true owner cannot attorn to another by a conveyance or otherwise, unless and until, in some way, the true owner is informed that the tenant is repudiating his tenancy. Flanagan v. Pearson, 61 Tex. 302; Juneman v. Franklin, 67 Tex. 415, 3 S. W. 562; Buford v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275, 278; Werts' Heirs v. Vick (Tex. Civ. App.) 203 S. W. 63; Dolen v. Lobit (Tex. Com. App.) 262 S. W. 731; Wilson v. Beck (Tex. Civ. App.) 286 S. W. 315, 321; Gilbert v. Gum (Tex. Civ. App.) 265 S. W. 725, 726; Reichstetter v. Reese (Tex. Civ. App.) 39 S. W. 597; Rio Bravo Oil Co. v. Sanford (Tex. Civ. App.) 217 S. W. 219, 220; Deitzman v. Sayles (Tex. Civ. App.) 245 S. W. 773; Whiting v. Edmunds, 94 N. Y. 309, holding that the possession of the tenant and his grantees is that of the landlord, and not hostile or adverse, though such grantees, who had taken a fee in ignorance of the fact that his grantor stood in the relation of tenant, and with the latter denying such relation. In Werts' Heirs v. Vick, supra, it is held that the possession of a tenant is the possession of the landlord, and that possession acquired under tenancy cannot be said to be adverse in support of limitations, until such time as it is shown that the landlord had notice of the repudiation of the tenancy; and that one en-

tering possession under tenant or lessee occupies the same position as does the original tenant and lessee, and is equally estopped to deny that the possession so acquired is that of the landlord.

In West Lumber Co. v. Sanders (Tex. Civ. App.) 225 S. W. 828, it was held that the possession of a tenant at will, or those holding under or through him, is not adverse to the owner, in the absence of notice to such owner of a repudiation of the tenancy contract.

In Reichstetter v. Reese (Tex. Civ. App.) 39 S. W. 597, the trial court gave the following charge: "If, therefore, you believe from the evidence that W. J. Buckhalter went into the occupancy and possession of the 1.180 acres of land in controversy in this suit as the tenant of the plaintiffs, and if he remained continuously in the possession thereof, and if, while said Buckhalter was so in possession, the defendant Reichstetter entered upon and took possession of said land, either with or without the permission of Buckhalter, or if said Reichstetter went into the possession of the land under a purchase from Buckhalter, made while Buckhalter was in the possession of the land as aforesaid, in such case you should find a verdict for the plaintiffs for the land in controversy, unless you believe from the evidence that, prior to the entry of Reichstetter upon said land, Buckhalter had renounced and repudiated his said tenancy, and given plaintiffs notice thereof." The appellate court held that the charge was correctly given.

In Rio Bravo Oil Co. v. Sanford, supra, the court quotes with approval the following: "Not only is the original lessee ordinarily precluded from denying the validity of the lessor's title at the time of making the lease, but all persons claiming or holding by, through, or under the lessee are also precluded. Were this not so, it is plain, the rule of preclusion would be of little benefit to the landlord. In accordance with principle, the assignee of the lessee is precluded to the same extent as the lessee himself from denying the lessor's title. And the fact that the assignment purports to transfer a fee-simple interest is immaterial in this connection."

The undisputed evidence shows that the 5 acres owned by appellees was of but little value unless valuable minerals should, at some time, be discovered thereunder; that appellant was the owner of two tracts of land, one of about 840 acres lying wholly within the Griffith survey, and the other of about 875 acres, an unidentified part of which was in the Griffith survey. Whether these two tracts lay contiguous, one to the other, is not shown. It is shown, however, that appellant owned a large acreage of land in one body lying adjoining the 5 acres owned by appellees; it is shown that the Old River Company for a number of years prior to its conveyance in December, 1923, to the Kirby Company, cultivated a large portion of the land conveyed in rice, but that no part of the 5-acre tract claimed by appellees was so used.

It was shown that after Old River Company conveyed the large acreage of land, including the 5 acres, to this appellant, Kirby Company, such company, under the management of Dr. Collier, used and cultivated the same during the years 1924 and 1925 in the same manner as it had been used and cultivated by the Old River Company, its vendor. It is shown that a number of tenants of the Old River Company remained tenants of appellant after the conveyance was made by the Old River Company to the Kirby Company, and that Dr. Collier, president and general manager of the Old River Company's affairs, from the time of such conveyance to the last part of 1925, a date only three years and nine months prior to the filing of this suit, remained in possession of the land apparently in the same manner as before the conveyance was made to the Kirby Company, that is, he procured tenants on portions of the land just as he had done prior to the conveyance to the Kirby Company.

It is shown that the 5 acres of land in question was in Chambers county, forty or fifty miles from Houston, where appellee Houk resided, and several hundred miles from the city of Kerrville, where appellee J. S. Wheless resided. As before stated, neither of the appellees had any knowledge of the existence of the conveyance of the Old River Company to the Kirby Company, until shortly before this suit was instituted, nor did they have any kind of notice before such time that the Kirby Company was asserting any claim to their five acres of land; especially were they ignorant of the matters stated, until Dr. Collier had ceased his control of the rice farm in the last part of 1925.

Notwithstanding the facts stated, the majority of this court, by their action in reversing the judgment of the trial court and rendering judgment for appellant, has in effect held that the appellees were, as a matter of law, charged with notice that the Kirby Company was holding "adverse possession" of appellees' 5 acres of land as that term is used in article 5515, Rev. Statutes of 1925, which article reads in part as follows: " 'Adverse possession' is an actual and *visible appropriation* of the land." (Italics, those of the writer.)

It is a fact that the 5 acres owned by appellees was in actual possession of the Kirby Company during the years 1924 and 1925, by reason of its possession through Dr. Collier, who remained in control of the same as agent of the Kirby Company in the same manner as he had theretofore controlled it for the Old River Company, the tenant of appellees, since December 6, 1925, at which time the Old

River Company conveyed a large acreage to the Kirby Company, including the 5 acres owned by appellees. But as Dr. Collier continued to use the whole body of land belonging to appellant and the 5 acres during the years of 1924 and 1925 just as he had while acting as agent for the Old River Company, the tenant of appellees, such possession did not become *visible* to appellees until Dr. Collier ceased his control the last of the year 1925. Dr. Collier for the Old River Company, the tenant of appellees, hoisted the flag as a tenant of appellees, relative to their 5-acre tract in 1921, and that flag continued to fly according to the undisputed testimony of Dr. Collier up to the last part of the year, 1925. The majority in their opinion in effect asserts that appellees were under obligations to use due care and diligence to give notice of their rights to the small 5-acre tract and not blindly rely upon the promises of Dr. Collier, to hold the same for them. What kind of diligence would the majority require of appellees to discover that the Old River Company had sold said 5-acre tract to the Kirby Company? In 1921, after being informed that the Old River Company had its land inclosed or partly so, together with a large acreage owned by said company, and after receiving the promise of Dr. Collier that the Old River Company was not and would not claim appellees' land adversely to them, the fact that appellant continued to cultivate the lands actually owned by it, in rice, just as it had been cultivated before it purchased from the Old River Company, as it had the right to do, was in the opinion of the writer no notice whatever to appellees that appellants were holding the 5 acres owned by appellees adversely to them. By no manner of means should it be held that under such circumstances appellees were, as a matter of law, charged with notice of a *visible* adverse holding by appellant of the 5 acres owned by appellees.

If appellees had gone in the vicinity where the land was situated, in either of the years 1924 and 1925, they would have discovered that the large body of land formerly owned by the Old River Company was being used under the control of Dr. Collier just as it had been used prior to said years. By such observation appellees were by no manner of means charged with notice that their five acres was being held adversely to them.

In 2 Corpus Juris, p. 75, § 57, it is said: "Most courts and text-writers, in defining what is meant by the term 'adverse possession,' include as one of the essential elements thereof 'open and notorious' possession. It is in general true that title by adverse possession cannot be acquired unless the possession is open and notorious, but the rule must be understood with some qualification. A more correct statement of the rule is: In order to make good a claim of title by adverse holding the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally and with a purpose to assert a claim of title adversely to his, or so patent that the owner could not be deceived, and such that if he remains in ignorance it is his own fault. The claimant must exercise such acts of ownership and occupancy as are sufficient to "hoist his flag" over the lands, so that all may observe it.' "

Although this case was tried before a jury to whom the evidence was submitted for the finding of facts, the trial court without authority so to do, at the request of appellant, filed findings of facts, which have been, I think, improperly copied into the transcript.

The majority of this court in their opinion referring to such findings say: "These findings of fact by the trial court, the case having been submitted to a jury on fact issues, are not required by the statute and cannot be given the force and effect of findings made by the court in cases not submitted to a jury, and therefore are not inserted in this opinion as entitled to the *same consideration* as fact findings in a case submitted to the court without a jury, but are merely copied as a correct statement of the facts shown by the undisputed evidence *and as the conclusions of the court upon the facts found by the jury.*" (Italics those of the writer.)

I pass this up without comment, other than to say that such findings in my opinion are not only not entitled to the "same consideration as fact findings in cases submitted to a jury," as stated by the majority, but that they are not entitled to any consideration whatever by this court for any purpose. Nor is this court concerned about what conclusions were reached by the trial court upon the facts found by the jury. Such expressed conclusions in my opinion should not be considered by this court for any purpose.

It is clear from what I have said that I think the judgment of the trial court should be affirmed.

### On Motions to Correct Opinion and for Rehearing.

PLEASANTS, C. J.

In response to a motion therefor by appellant, the majority of this court make the following corrections in the statement contained in our original opinion:

We erroneously stated in our former opinion that: "This suit was filed October 25, 1929." The record discloses that the suit was filed on March 21, 1930. While we do not regard the erroneous statement of the date the suit was instituted as material, since appellant's possession of the land under its

deed continued for more than five years prior to October 25, 1929, we make the correction so that the facts stated in the opinion will accurately reflect the record.

The statement in our original opinion that the fact findings of the trial judge therein copied were "a correct statement of the facts shown by the undisputed evidence" was obviously only intended to refer to the fact findings upon which our conclusion that the undisputed evidence in the case established appellant's claim of title by its adverse possession, use, cultivation, and enjoyment of the land for more than five years prior to the institution of this suit, claiming title thereto under its deed of conveyance from the Old River Company. We so hold regardless of whether prior to the execution of that deed the Old River Company had repudiated its agreement with the appellees that it would not claim the land under its deed from appellees' vendor. We do not and have not passed upon the question of whether the evidence shows such repudiation.

The record discloses that D. J. Lawrence and wife, who were the common source of the title under which both parties claim, on January 8, 1916, conveyed by warranty deed to A. J. Sheffield, trustee, the tract of 150 acres of which the 5-acre tract in controversy is a part. This deed was filed for record on April 11, 1916, and duly recorded in the proper deed records. Thereafter, on August 5, 1918, Sheffield conveyed this 150-acre tract to G. W. Collier, who thereafter on March 1, 1919, conveyed it by deed of general warranty to the Old River Company. Each of these deeds was filed for record and duly recorded in the deed records of the county in which the land is situated, and the Old River Company took and held possession of the land under its deed until it conveyed it by warranty deed to appellant on December 6, 1923, since which time appellant, as before shown, has held such possession thereof as to perfect its title under the five years' statute of limitation, unless, as held by the trial court, by the agreement before set out between Mr. Houk and Dr. Collier, it is precluded from asserting title by limitation under the rule which denies the right to claim title by limitation against the owner to one who obtains possession under a tenant of the owner.

We cannot bring ourselves to believe that in the situation here presented the repudiation by the Old River Company, prior to its sale and conveyance to appellant, of its agreement with appellees made two years after it had purchased the land and taken and held possession thereof under a deed from the vendor of appellees, that it would execute a written agreement to the effect that its future possession of the land would not be adverse to appellees, can be held essential to appellant's right to prescribe under the five years' statute of limitation under its deed from the Old River Company. This promise of the Old River Company, which was never performed by it, was wholly unknown to appellant at the time it purchased the land from that company and took possession thereof under its deed. As before said, the Old River Company did not obtain possession of the land under any agreement to hold it as a tenant of appellees. It was in possession under a deed conveying and warranting a title adverse to appellees' title and appellant took possession under the same character of conveyance from the Old River Company. There was nothing upon the face of the record and no facts in evidence which brought home to appellant any notice of appellees' secret agreement with the Old River Company.

We think none of the cases cited in the dissenting opinion sustains its conclusion that upon these facts the appellant is precluded from asserting title by limitation against appellees, upon the sole ground that the title under which it claims the land was obtained from a tenant of appellees. Appellant obtained title and possession from one holding under a recorded title adverse to appellees' title, without knowledge of any facts to put a reasonably prudent person upon inquiry which, if reasonably pursued, would have led to the discovery that his vendor had repudiated the title which it had purchased, and after entering upon and taking possession of the land under that title had attorned to the holders of an adverse title.

Appellees' contentions find no support from the opinion of this court in the case of Richardson v. Houston Oil Co., 176 S. W. 628, 631, in which, after stating the general rule that a tenant is estopped from disputing the title of his landlord, it is said: "It is equally well settled by the authorities that this rule of estoppel applies with full force to one who obtains or claims possession through or under the tenant of another. Flanagan v. Pearson, 61 Tex. 306; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609; Swan v. Busby, 5 Tex. Civ. App. 63, 24 S. W. 303." And: "From the facts before stated it is clear that the defendants James and Annie Brackin, who obtained possession of the land under the lease from defendant, and gave no notice to defendant of the repudiation of such lease and their attornment to plaintiffs, are estopped from denying defendant's title, and that plaintiffs, who show no title in themselves, and who induced said tenants of defendant to secretly attorn to them, are in no better position than the tenants themselves, and are also estopped to deny the title of defendant."

It is a far cry from the facts of that case to the facts of this case. Estoppel, which is the basic principle of the rule which prohibits a tenant from disputing the title of his landlord, cannot arise upon the facts of this case. It certainly cannot be held that a purchaser

of land from one who took and held possession under a record title for several years and was so apparently holding at the time he conveyed to the purchaser, who had no knowledge of any facts to put him upon notice that his vendor had attorned to the holders of an adverse title, would be equitably estopped to claim title under the five years' statute of limitation against the holder of the adverse title.

■ As stated in our former opinion, it is a settled rule of decision in this state that the lack of good faith of the claimant under the five years' statute of limitation when all the requirements of the statute are complied with will not prevent the vesting of title in such claimant. If the rule were otherwise, the facts of this case raise no issue of appellant's lack of good faith in its purchase of the land.

We adhere to the conclusions expressed in our original opinion, and the motions for rehearing are refused.

Refused.

LANE, J., dissenting.